# STATE OF MICHIGAN

# COURT OF APPEALS

GLORIA HERNANDEZ,

　　　　Plaintiff-Appellee,

v

STATE AUTOMOBILE MUTUAL INSURANCE
COMPANY,

　　　　Defendant-Appellant.

UNPUBLISHED
April 19, 2018

No. 338242
Van Buren Circuit Court
LC No. 14-640835-NF

Before: GLEICHER, P.J., and M. J. KELLY and CAMERON, JJ.

PER CURIAM.

Defendant, State Automobile Mutual Insurance Company, appeals as of right the trial court's order dismissing this case in its entirety. The trial court previously granted plaintiff's, Gloria Hernandez, motion to enforce the settlement agreement, and it ordered defendant to pay plaintiff for past no-fault personal injury protection (PIP) benefits in the amount of $130,900 and future attendant care benefits at a rate of $12.50 an hour for 14 hours a day, from May 13, 2016, until December 31, 2016, which totaled $40,775. We reverse and remand.

This case arises out of injuries plaintiff suffered as a result of a motor vehicle accident that occurred on August 21, 2011, in Van Buren County, Michigan. The parties participated in voluntary, facilitative mediations on February 18, 2016, and May 12, 2016. On May 12, the parties reached a proposed settlement agreement. The agreement stated that defendant would pay plaintiff $130,900 for past attendant care benefits through May 12, 2016, and future attendant care benefits for $12.50 an hour, 14 hours a day, for a period of two years (ending on May 13, 2018). The agreement was signed by plaintiff; however, the claims representative for defendant indicated that he would need approval from his superiors and the Michigan Catastrophic Claims Association (MCCA) before signing the agreement. The agreement stated that "[t]his settlement is contingent on the approval of MCCA."

The parties continued the settlement discussion via a series of e-mails and telephone calls. On May 19, 2016, defendant sent an e-mail to plaintiff stating that the claims representative received authority to settle the past claims for $130,900. However, his superiors rejected the two-year agreement for future attendant care. In a telephone conversation with the mediator, plaintiff proposed that defendant pay future attendant care for one year (at the same rate) instead of two years. The mediator communicated the proposal to defendant; however,

-1-

defendant made a counteroffer to pay for attendant care through the end of 2016. The mediator communicated defendant's counteroffer to plaintiff and she orally accepted.

On June 2, 2016, defendant sent an e-mail to plaintiff and the mediator that stated the following:

> It sounds to me like we have a deal to settle the past and an agreement to go through the end of the year? [Plaintiff's counsel], can you confirm that is correct? If so, [mediator] would you or your staff make the necessary changes to the proposed Settlement Agreement and send it to us please?

Plaintiff responded to the email and said it was also her understanding of the agreement. She explained that the mediator was revising the proposed settlement agreement to that effect. The mediator revised the proposed settlement agreement to reflect that defendant agreed to pay attendant care benefits at the rate of $12.50 an hour for 14 hours a day through December 31, 2016, and he sent it to the parties on June 6, 2016. However, neither party signed this agreement.

Throughout May and June 2016 (during settlement negotiations), defendant continued to conduct surveillance on plaintiff. The investigator observed plaintiff driving on her own, which was inconsistent with her claim that she required 24-hour attendant care. On June 8, 2016, defendant submitted plaintiff's declarations page, Health Insurance Portability and Accountability Act application, independent medical examination (IME) reports, the police report from the accident, surveillance reports, attendant care prescriptions, and other medical records to the MCCA. Defendant participated in a conference call with representatives of the MCCA on June 15, 2016. During the conference call, representatives from the MCCA indicated that they would not approve the settlement agreement.

On June 17, 2016, defendant sent an e-mail to plaintiff stating the following:

> Despite significant efforts by [the claims representative] with [defendant], he was unable to get the VP to sign off on the settlement. Additionally, we spoke with the MCCA and they had reservations as well given [the IME] report and the prior medical. So we are moving forward to trial.

On July 5, 2016, defendant sent the following e-mail to plaintiff:

> We are six weeks out from trial now. Following mediation, [defendant] has had [plaintiff] under surveillance for a couple reasons. Plaintiff's subjective claims simply did not match up with her medical records, nor [the doctor's report] and we place a very high value on his opinion as he is well respected in his field. The medical records, of course, speak for themselves and [plaintiff's] long history of problems which we do not believe are related to the motor vehicle accident.

> We are no longer in a position to settle due to the results of the surveillance, which include Plaintiff driving alone on several occasions with the knowledge of her children/caregivers, Plaintiff being left alone and it appears that the caregivers even trust Plaintiff driving around with minor children. All this

activity by Plaintiff is in direct contradiction to testimony by both Plaintiff and her daughter/caregiver.

Plaintiff filed a motion to enforce the settlement agreement on July 18, 2016. After a series of hearings, the trial court granted that motion, finding that MCCA approval was a condition precedent to the performance of the settlement agreement, but defendant waived that condition by continuing to conduct surveillance on plaintiff and by submitting the surveillance reports to the MCCA. The trial court subsequently issued an order dismissing this case. Defendant now appeals as of right.

First, defendant argues that the trial court erred in concluding that there was a meeting of the minds on the essential terms of the settlement agreement. We disagree.

"The existence and interpretation of a contract are questions of law reviewed de novo." *Kloian v Domino's Pizza LLC*, 273 Mich App 449, 452; 733 NW2d 766 (2006). This Court reviews "for clear error the findings of fact underlying the circuit judge's determination whether a valid contract was formed." *46th Circuit Trial Court v Crawford Co*, 476 Mich 131, 140; 719 NW2d 553 (2006). "A finding is clearly erroneous if, the reviewing court, on the whole record, is left with the definite and firm conviction that a mistake has been made." *Id*. (quotation marks and citation omitted). "The finding of the trial court concerning the validity of the parties' consent to a settlement agreement will not be overturned absent a finding of an abuse of discretion." *Vittiglio v Vittiglio*, 297 Mich App 391, 397; 824 NW2d 591 (2012) (quotation marks and citation omitted). "An abuse of discretion occurs when the decision results in an outcome falling outside the range of principled outcomes." *Ronnisch Construction Group, Inc v Lofts On the Nine, LLC*, 306 Mich App 203, 208; 854 NW2d 744 (2014).

"An agreement to settle a pending lawsuit is a contract and is to be governed by the legal principles applicable to the construction and interpretation of contracts." *Walbridge Aldinger Co v Walcon Corp*, 207 Mich App 566, 571; 525 NW2d 489 (1994). "Contractual language is construed according to its plain and ordinary meaning . . . ." *Pakideh v Franklin Commercial Mtg Group, Inc*, 213 Mich App 636, 640; 540 NW2d 777 (1995). Furthermore, "[a]n agreement or consent between the parties is required to be in writing and subscribed by the party, or by the party's attorney, against whom the agreement is offered when the agreement or consent is subsequently denied by a party." *Walbridge Aldinger Co*, 207 Mich App at 571. "Before a contract can be completed, there must be an offer and acceptance." *Pakideh*, 213 Mich App at 640. "Further, a contract requires mutual assent or a meeting of the minds on all the essential terms." *Kloian*, 273 Mich App at 453.

On the basis of the record in this case, there was "a meeting of the minds on the essential terms of the agreement." *Id*. at 454. The essential terms of the agreement were the settlement of the past attendant care for $130,900, and future attendant care for $12.50 an hour for 14 hours a day until the end of 2016. The proposed settlement agreement, telephone calls, and e-mails between the parties were sufficient to create an enforceable contract between the parties. At the very least, the parties came to an agreement as to the terms that would be submitted to the MCCA for approval. See *id*. at 453-454 (stating that the parties reached an agreement on essential terms of the agreement via an e-mail exchange in which the plaintiff offered to accept $48,000 from the defendant to settle the lawsuit and the defendant accepted). Thus, the trial

court did not abuse its discretion when it found the parties entered into a valid settlement agreement.

Further, defendant's assertion that the agreement was not properly subscribed as required by MCR 2.507(G) because the agreement was never signed by defendant is without merit.

MCR 2.507(G) states:

An agreement or consent between the parties or their attorneys respecting the proceedings in an action is not binding unless it was made in open court, or unless evidence of the agreement is in writing, subscribed by the party against whom the agreement is offered or by that party's attorney.

Defendant's specific assertion was addressed and rejected by this Court in *Kloian*, 273 Mich App at 459 (concluding that e-mail messages with the attorney's name typed or appended at the end of the message satisfied the subscription requirement of MCR 2.507(G)). In this case, the parties' attorneys' names are typed at the end of the e-mails exchanged on May 19 and June 2. As a result, defendant's contention that the agreement was not properly subscribed is without merit.

Finally, the parties appear to agree on appeal that MCCA approval of the settlement agreement was a condition precedent to the performance of the agreement. However, plaintiff contends that defendant waived this condition by conducting surveillance on plaintiff and submitting reports of that surveillance to the MCCA. On the other hand, defendant argues that it did not take any action to prevent MCCA approval.

This Court has held that a condition precedent "is a fact or event that the parties intend must take place before there is a right to performance." *Harbor Park Market, Inc v Gronda*, 277 Mich App 126, 131; 743 NW2d 585 (2007) (quotation marks and citation omitted). "If the condition is not satisfied, there is no cause of action for a failure to perform the contract." *Id*. However, "[w]here a party prevents the occurrence of a condition, the party, in effect waives the performance of the condition." *Id*. at 131-132. "Hence, the performance of a condition precedent is discharged or excused, and the conditional promise made an absolute one . . . ." *Id*. at 132 (quotation marks and citations omitted). "[A] party must prevent the condition from occurring by either taking some affirmative action, or by refusing to take action required under the contract, before a court will find a waiver of a condition precedent." *Id*.

In *Harbor Park Market*, 277 Mich App at 134, this Court concluded that the defendants did not waive the condition precedent included in their agreement with the plaintiff. In that case, the plaintiff submitted a $55,000 offer to the defendants for the purchase of their liquor license and fixtures. *Id*. at 128. The defendants accepted the offer; however, the acceptance was expressly conditioned on their attorney's approval. *Id*. Before the attorney reviewed the first offer, the defendants accepted a second offer for $250,000, which was also conditioned on the approval of their attorney. *Id*. at 128-129. The attorney reviewed the agreements and approved the second agreement for $250,000. *Id*. at 129. The plaintiff filed suit for breach of contract, claiming that the defendants waived the condition of attorney approval by submitting a subsequent purchase offer. *Id*. However, this Court concluded that the defendants did not

interfere with their attorney's approval. *Id*. at 132-133. They submitted the agreement to their attorney in a timely manner as required, and the agreement did not prevent them from submitting additional offers before the attorney approved the plaintiff's offer. *Id*. at 134. Moreover, the defendants did not "otherwise actively interfere[] with [their attorney's] approval, such as instructing the attorney to disapprove the agreement," and defendants' attorney had "complete discretion to approve or disapprove the agreement for whatever reason." *Id*. at 133. As a result, the defendants did not waive the condition precedent. *Id*. at 134.

In this case, as in *Harbor Park Market*, defendant did not waive the condition precedent when, after entering into the binding settlement agreement, it continued its ongoing surveillance and submitted the findings to the MCCA. The terms of the settlement agreement did not prevent defendant from engaging in additional surveillance before the MCCA approved the settlement agreement, and the MCCA had the final decision as to any approval or denial of an agreement pursuant to the MCCA Plan of Operation. Additionally, defendant did not tell the MCCA to deny the settlement agreement, nor did it take any steps to wrongfully prevent the approval of the agreement. In fact, defendant was mandated under the Plan of Operation to submit any materials that could have a material effect on the MCCA's decision. Plaintiff knew from earlier proceedings that defendant had conducted surveillance throughout the entirety of the pending claim, and it is a known practice that insurers will hire investigators to conduct surveillance on claimants. Thus, to conclude that defendant took any action that prevented the condition of the settlement from occurring is contrary to the holding in *Harbor Park Market*.

The trial court, however, distinguished this case from *Harbor Park Market*, concluding that defendant here took affirmative actions that prevented the occurrence of the condition. We do not agree with this analysis. In *Harbor Park Market*, we did not establish a rule that waiver is premised on any action that constitutes the "cause in fact" of the non-occurrence of a condition precedent. If that were the case, we would have determined the defendants in *Harbor Park Market* waived the condition precedent because accepting another bid was certainly the cause in fact of the denial of Harbor Park's bid. However, because the terms of the condition precedent did not preclude the acceptance of other bids, we did not find a waiver of the condition. The same can be said here. It is evident that defendant's surveillance activities were a cause in fact of the MCCA's denial, but there was nothing in the terms of the condition that precluded defendant from continuing its surveillance activities. The trial court erred as a matter of law when it concluded that defendant's activities constituted a waiver of the condition precedent.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Elizabeth L. Gleicher
/s/ Michael J. Kelly
/s/ Thomas C. Cameron