# STATE OF MICHIGAN

# COURT OF APPEALS

YVONNE T. CORBAT,

Plaintiff-Appellant,

v

MIDLAND COUNTY AGRICULTURAL AND
HORTICULTURAL SOCIETY, MARGARET
WEGNER, TAMMI MYERS, DON ANGER,
ROXANNE WHEELER,

Defendants-Appellees,

and

DAWN ZASKE,

Defendant.

UNPUBLISHED
July 19, 2018

No. 338753
Midland Circuit Court
LC No. 15-003013-CZ

Before: STEPHENS, P.J., and SHAPIRO and GADOLA, JJ.

PER CURIAM.

Plaintiff appeals the trial court's order granting defendants' motions for summary disposition pursuant to MCR 2.116(C)(10). We affirm.

## I. FACTS AND PROCEDURAL HISTORY

Plaintiff was a board member of defendant Midland County Agricultural and Horticultural Society ("the Fair") for 40 years until she was not reelected in 2014. The Fair, an organization that runs the Midland County Fair, is a domestic nonprofit corporation that is subject to the statutory requirements of the Michigan Agricultural or Horticultural Societies Act, MCL 453.231 et seq. Defendants Margaret Wegner, Tammi Myers, Don Anger, Roxanne Wheeler, and Dawn Zaske ("individual defendants") are board members of the Fair.

To become a member of the Fair, an individual has to submit a completed membership card and pay a $16 fee. Membership is not limited to residents of Midland County, but candidacy for a board seat is limited to members residing in Midland County. Board membership is an unpaid position, and there are no financial benefits to being a member of the board. After membership cards are submitted, the Fair's office manager uses the information

-1-

listed on them to generate a mailing list for ballots for the board of directors' election. The mailing list is filed with the county clerk. Although people are free to purchase memberships after the list is compiled, only those who became members at least 30 days before the relevant annual meeting may vote. Ballots are mailed to the addresses provided on the membership cards. Completed ballots are mailed to the county clerk, who tallies them and provides the results to the board of directors.

The evidence presented demonstrated, and it is not disputed in this appeal, that for many years, members of the Fair, including plaintiff, filled out membership cards on behalf of other individuals, usually at that individual's request. Members also gifted membership to friends and family members, and paid the membership dues for these individuals. On most occasions, the member that gifted the membership would fill out the membership cards on behalf of the individuals that received the membership as a gift. Because of this practice, the addresses listed for the prospective members were not always entirely accurate. The Fair took these addresses at face value and did not verify them for accuracy; it relied on people to provide the correct address. The only time addresses listed on the membership cards were verified was when the member sought to become a candidate for the board. There was also evidence that when the ballots were mailed to the addresses listed on them, some members filled out ballots on behalf of family members, usually with permission, and mailed them back to the county clerk.

After losing the Board election, plaintiff sued, seeking injunctive relief in the form of nullification of the 2014 board of directors' election. She also asked the court to issue a declaratory judgment that the Fair's membership process violated MCL 453.233, which provides as follows:

> Any person who has attained the age of 18 years and shall pay into the treasury of the society, at a time and in an amount and manner as the bylaws direct, a sum of money not to exceed $25.00, and subscribe to the articles of association shall be a stockholder or member therein and entitled to all the privileges and immunities thereof.

Plaintiff claimed that the Fair's acceptance of the membership cards "that are deficient in formation, signature, and acknowledgement of the requisite fee" violates MCL 453.233. She also claimed that the board violated this provision by preparing the mailing list, distributing the ballots for the board election, and tallying the ballots before the annual meeting. As to the individual defendants, who were members of the board during the 2014 calendar year, plaintiff claimed that they had breached their fiduciary duty by allowing such procedures.

Plaintiff relies heavily on the provisions of MCL 453.233, which requires members to "subscribe to the articles of the association." She asserts that the term "subscribe," means to sign one's signature, and that since some members did not sign the membership card, they were not legal members of the Fair. She also argued that some membership forms were void because they were submitted and paid for by persons other than the new members themselves.

The trial court granted the summary disposition motions brought by the Fair and by the individual defendants. The court held, among other things, that the Fair's bylaws comply with MCL 453.233 because the statute does not require a signature on the membership card.

## II. ANALYSIS

## A. STATUTORY INTERPRETATION

Plaintiff's claim rests, in large measure, on her argument that the word "subscribe," as used in MCL 453.233, means that a signature is required to complete a membership card. We disagree.[1]

A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 206; 815 NW2d 412 (2012). Summary disposition is proper if there is "no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Latham v Barton Malow Co*, 480 Mich 105, 111; 746 NW2d 868 (2008). The court considering the motion "must consider the affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties in the light most favorable to the party opposing the motion." *Joseph*, 491 Mich at 206. All reasonable inferences are to be drawn in favor of the nonmovant. *Dextrom v Wexford Co*, 287 Mich App 406, 415; 789 NW2d 211 (2010).

Article II of the Fair's bylaws provides for qualification of membership:

> Section 1: **Application.** The members of this corporation are those persons having membership rights in accordance with the provisions of these Bylaws . . . .

> \* \* \*

> Section 3: **Qualifications.** To qualify for and be admitted to membership in this corporation, a candidate must support the purposes of this corporation as set forth in these Bylaws. . . .

Plaintiff argues that the Fair's bylaws are deficient and contrary to the provisions of MCL 453.233 because they do not require the individuals to "subscribe" to the articles of the corporation by signing at the bottom of the membership cards. Plaintiff contends that the word "subscribe," as used in the statute, means strictly to "sign." MCL 453.233 provides as follows:

> Any person who has attained the age of 18 years and shall pay into the treasury of the society, at a time and in an amount and manner as the bylaws direct, a sum of money not to exceed $25.00, and *subscribe* to the articles of association shall be a stockholder or member therein and entitled to all the privileges and immunities thereof. [Emphasis added.]

---

[1] This Court reviews de novo a trial court's decision to grant summary disposition under MCR 2.116(C)(10). *Johnson v Recca*, 492 Mich 169, 173; 821 NW2d 520 (2012). Further, issues of statutory interpretation are reviewed de novo. *Speicher v Columbia Twp Bd of Trustees*, 497 Mich 125, 133; 860 NW2d 51 (2014).

In *Whitman v City of* Burton, 493 Mich 303, 311; 831 NW2d 223 (2013) (citations omitted), the Michigan Supreme Court laid out the well-established principles of statutory interpretation:

> When interpreting a statute, we follow the established rules of statutory construction, the foremost of which is to discern and give effect to the intent of the Legislature. To do so, we begin by examining the most reliable evidence of that intent, the language of the statute itself. If the language of a statute is clear and unambiguous, the statute must be enforced as written and no further judicial construction is permitted. Effect should be given to every phrase, clause, and word in the statute and, whenever possible, no word should be treated as surplusage or rendered nugatory. Only when an ambiguity exists in the language of the statute is it proper for a court to go beyond the statutory text to ascertain legislative intent.

Plaintiff's argument lacks merit for the following reasons. First, although the word "subscribe" is not defined in the statute, its meaning is not limited to signing one's name but is also subject to several other meanings, which includes to "agree or assent to." See *Black's Law Dictionary* (10th ed), p 1655 (defining the word "subscribe," to include, "To be in favor; to adhere"); *Random House Webster's College Dictionary* (1997) (defining the word "Subscribe," to include, "To agree or assent to.").

In support of her argument that "subscribe" may only mean to "sign," plaintiff refers us to *Kloian v Domino's Pizza LLC*, 273 Mich App 449; 733 NW2d 766 (2006). There, the Court defined the word "subscribe," as used in MCR 2.507(H).[2] This rule provides that a settlement or other agreement between parties at trial is not binding unless made in open court or "is in writing subscribed by the party against whom the agreement is offered." Plaintiff fails to recognize that the *Kloian* Court indicated in its opinion that the word, "subscribe" does not necessarily mean to "sign," and that " 'subscribed' is a different word from 'signed.' " *Kloian*, 273 Mich App at 459. According to the Court, "[W]e must treat 'in writing and signed' differently from a 'writing, subscribed,' " and it held that a document containing typed names rather than a signature was sufficient. *Id*. at 459-460.

Second, plaintiff's argument fails to recognize that statutory language "cannot be read in a vacuum. Instead, [i]t exists and must be read in context with the entire act, and the words and phrases used there must be assigned such meanings as are in harmony with the whole of the statute . . . ." *G.C. Timmis & Co v Guardian Alarm Co*, 468 Mich 416, 421; 662 NW2d 710 (2003). The language of the statute provides, in relevant part, that a prospective member shall "subscribe to the articles of association . . . ." MCL 453.233. Nowhere in the statue does it require that the prospective member "subscribe to the membership card." Indeed, as the trial court found, the statute does not even require membership cards.

---

[2] This provision is now MCR 2.507(G).

Accordingly, we reject plaintiff's argument that the statute mandates the signing of the membership card.

## B. BREACH OF FIDUCIARY DUTY

Plaintiff also argues that the trial court erred by concluding that the individual defendants did not breach their fiduciary duties to her. We disagree because plaintiff has not presented evidence establishing a genuine issue of material fact that would allow a fiduciary duty claim to go forward.

The Michigan Non-profit Corporation Act, MCL 450.2489 et seq., provides for claims of oppressive conduct:

> (1) A director of a corporation that is organized on a directorship basis, a shareholder of a corporation that is organized on a stock basis, or a member of a corporation that is organized on a membership basis may bring an action in the circuit court in which the principal place of business or registered office of the corporation is located to establish that the acts of the directors, shareholders, members, or others in control of the corporation are *Illegal, fraudulent, or willfully unfair and oppressive* to the corporation or to the director, member, or shareholder. . . .
>
> * * *
>
> (2) As used in this section, "willfully unfair and oppressive conduct" with respect to a member or shareholder means a continuing course of conduct or a significant action or series of actions that substantially interferes with the rights or interests of a member or shareholder as a member or shareholder. The term does not include conduct or actions that are permitted by an agreement, the articles of incorporation, the bylaws, or a consistently applied written corporate policy or procedure. [Emphasis added.]

In her amended complaint, plaintiff alleged that the individual defendants, in their capacity as board members, breached their fiduciary duty by: (a) circulating and providing membership application cards to any requesting party; (b) engaging in a course of conduct to fabricate and complete, without permission, membership cards with the intent to create ghost membership in the Fair; (c) accepting and knowingly assigning membership rights to persons that did not seek or pay for membership; (d) accepting and assigning membership rights to persons that did not tender a completed membership card; (e) allowing for courtesy membership that did not require the payment of the necessary fee, in order to accept and assign membership rights to such noncompliant membership applicants; and (f) reporting and approving 634 memberships.

Plaintiff has failed to proffer support for her claim that the individual defendants engaged in "illegal, fraudulent, or willfully unfair and oppressive conduct" against her. There was ample evidence that for years, members, including plaintiff, have filled out membership cards on behalf of prospective members, usually family members and friends and that this practice was not directed at plaintiff. Most significant, there was no evidence that this long-standing practice was used to influence the 2014 board election or that it was used to deprive plaintiff of her position

on the board.  There was also no evidence that memberships were obtained without payment of the $16 fee.

Defendant Margaret Wegner testified that she filled out membership cards for Chase, Dan, and Savannah Finney.  According to Wegner, Chase's mother asked her to fill out the membership card on his behalf, Dan's wife requested the membership on Dan's behalf, and Savannah's mother requested the same on her behalf.  Wegner paid for those memberships as a gift, and the address listed on the membership cards for the Finney family was the correct address.  Wegner also completed membership cards for Pat, Dave, and Joe Chritz, at the request of Pat Chritz, Dave and Joe's mother.  She was sure that Pat gave her cash to purchase the membership cards.  She knew that Dave and Joe did not reside at the address indicated on the membership card, but stated that Pat instructed her to send the cards to her address.  Wegner stated that she had never submitted a membership card to the Fair office without submitting a fee with it.

Defendant Tammi Myers is alleged to have filled out membership cards for Myron, Eric, Lana, and Judy Greene.  She admitted to filling out membership cards for the Greenes, with the help of the Fair manager, Trish Steele, at the request of Myron Greene.  Myers paid for the membership cards as gifts to the Greenes.

Defendant Don Anger is alleged to have filled out membership cards for 14 individuals—Gaylia, Lori, Linda, Dale, Neil, and Marsha Anger; Richard and Jere Geeseman; Jim and Lois Allen; Adrienne and James Essar; and Adam Erin Ruchert.  Anger averred that the 14 individuals were all his relatives, and that he paid for all the memberships as gifts from his personal funds.  He stated that he personally completed membership cards for his wife Gaylia, and his daughter, Lori, with their permission.  He did not personally complete the other membership cards but was aware that they were completed by his daughter and the Fair manager, with the permission of the individuals.  According to Anger, "Of these, per the membership cards, Gaylia Anger, Lori Anger, Linda Anger, Dale Anger, Neil Anger, Marsha Anger, Don Anger, Richard Geeseman, and Jere Geeseman (wife, daughter, sister, brother, sister-in-law, nephews) all had the same address listed on the membership cards" and "[t]he remaining memberships, contained different addresses where those people were believed to reside."

Defendant Roxanne Wheeler is alleged to have filled out membership card for Ruth, Grace, and Edwin Amazona, and Pam and Mark Schneider.  Wheeler admitted to filling out membership cards for the individuals; however, she averred that it was at their request and with their permission.  She explained that she used her address for the Amazonas because they reside in Hawaii, and that they had requested that she use her Michigan address so that they would receive their ballots.  Wheeler also testified that she gave the Schneiders their ballots when they arrived.

Wheeler is also accused of completing membership cards for Beth Koon's family.  She explained that Beth Koon was her friend, and that she bought the memberships as a gift.  Beth testified that Wheeler offered to buy memberships for herself, her husband, daughter, mother-in-law Margie Kirk, and her husband, Gene Kirk, as a gift, and that she accepted.  Beth instructed Wheeler to mail the Kirks' ballots to her house.  Beth's daughter, Breanna, testified that she gave Beth permission to have Wheeler fill out her membership card.  Wheeler testified that she

changed a few addresses on some of the membership cards to her address, and explained that those individuals had indicated to her that they were moving and had asked that their ballots be mailed to Wheeler's home. She averred, however, that when the ballots for the individuals arrived, she gave them their ballots.

In her deposition testimony, plaintiff admitted that it was proper for one family member to sign up other family members as long as they used the proper address. When questioned about the allegation in her complaint about "ghost memberships," plaintiff responded, "I would say it should be almost bogus addresses instead of ghost memberships . . . ." She admitted that she did not find anyone or talk to anyone who stated that they would not have agreed to be members or would have objected to being made a member. According to plaintiff, the complaints were, "I didn't even know I was a member." When asked how plaintiff knew that the people that became members did not give their permission to be members, plaintiff responded, "I really don't know that." She stated that it was also permissible that many of the membership cards were not signed. In fact, plaintiff testified that the membership cards she purchased for herself and her family members were filled out and signed by a Nic Hall.

Regarding her allegation that the individual defendants fabricated and completed membership cards on behalf of other people without permission, plaintiff admitted that she was unaware of "ghost" members, and conceded that the only reason that she was asserting the breach of fiduciary duty claim against the individual defendants was because they did not have the proper address on the membership cards for the individuals they signed up. This is not enough to establish illegal, fraudulent, or willful unfair and oppressive conduct.

Finally, plaintiff's assertion that the individual defendants filled out ballots on behalf of other members, without their permission, is not supported by the evidence. Apart from defendant Wheeler, who admitted to filing out ballots on behalf of two other families, with their permission, the remaining individual defendants testified that they did not vote on behalf of any member. Wegner testified that she had never completed a ballot on behalf of any person other than herself. Anger testified that the only ballot he received in the mail was his, that he only voted his own ballot in the 2014 election, and that he did not vote on behalf of other members of his family. There is no evidence that Myers filled out ballots on behalf of the persons for whom she completed membership cards. There is also no evidence that defendants acted in concert with each other to permit Wheeler or any other person to fill out ballots on behalf of other individuals for the purpose of depriving plaintiff of her position on the board.

Office assistant for Vital Statistics at the Midland County Clerk's Office, Amanda Dikeman, who is responsible for overseeing the election process, testified that on some occasions, multiple ballots were received in the same envelope and that sometimes the writing on the ballots looked the same. Relying on this testimony, plaintiff concludes that "[a]ll this evidence demonstrates that Defendants facilitated and participated in what was essentially proxy voting (filing out ballots for another) and assigning membership rights without the member's consent . . . ." However, plaintiff misconstrues Dikeman's testimony, which did not state that it was the individual defendants that returned the envelopes with multiple ballots. Although Dikeman testified that ballots did not always come back in one ballot per envelope because some families would return multiple ballots in the same envelope, she stated that returning multiple ballots in an envelope was not unusual because she had seen it done in previous years.

Plaintiff further argues that the individual defendants breached their fiduciary duty by engaging in proxy voting, which is prohibited under the bylaws. Wheeler testified that she filled out more than one ballot and that she did so with oral permission. This argument lacks merit because mere oral permission to vote on someone's behalf is not enough to establish proxy. A proxy is defined as, "[A]uthority or power to act for another: a document giving such authority; *specif*[*ically*] a power of attorney authorizing a specified person to vote corporate stock." *Merriam-Webster's Collegiate Dictionary* (11 ed). Additionally, the Michigan Nonprofit Corporations Act, MCL 450.2101 *et seq*, provide for "methods [that] constitute a valid means by which a shareholder, member, or person entitled to vote . . . may grant authority to another person to act as proxy." MCL 450.2421(5). A thorough reading of the provision shows that such authority must be in writing. In this case, there is no evidence of any written authority from members to other members to vote on their behalf.

Accordingly, the trial court properly granted defendants' motion for summary disposition on this issue because plaintiff has not presented evidence establishing a genuine issue of fact that would allow her breach of fiduciary duty claim to go forward.[3]

Affirmed.

/s/ Cynthia Diane Stephens
/s/ Douglas B. Shapiro
/s/ Michael F. Gadola

---

[3] We note that although plaintiff's claim was properly dismissed, her allegations and the record do raise concerns about the propriety of defendant society's election process, and that defendant would be wise to assure that the integrity of its electoral procedures does not give rise to such questions in the future.