*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

CANDY JUANITA LAWSON,

        Defendant-Appellant.

UNPUBLISHED
June 6, 2019

No. 342213
Shiawassee Circuit Court
LC No. 2015-007881-FH

Before: SWARTZLE, P.J., and M. J. KELLY and TUKEL, JJ.

PER CURIAM.

Defendant, Candy Juanita Lawson, appeals as of right her convictions after a jury trial of unlawful imprisonment, MCL 750.349b, first-degree abuse of a vulnerable adult, MCL 750.145n(1), and embezzlement from a vulnerable adult involving $1,000 or more but less than $20,000, MCL 750.174a(4)(a). The court sentenced her to two concurrent prison terms of 10 to 15 years for unlawful imprisonment and first-degree abuse of a vulnerable adult, to be served consecutively to a prison term of 40 to 60 months for embezzlement. We affirm.

After the death of her mother in 2007, defendant took custody of two disabled adults, Dianna and Justin Churchill (hereinafter referred to as "Dianna" and "Justin"), whom her mother had adopted, and transported them to live with her in Kentucky.[1] In 2013, defendant moved to Michigan, and in July 2015, an acquaintance of defendant discovered Dianna locked in a small,[2] dark room in defendant's Michigan home. Dianna was severely malnourished and filthy,

---

[1] Dianna and Justin were not biological siblings of each other. Authorities later learned that Justin had died in defendant's care in Kentucky in 2009 and had weighed 60 pounds at the time of his death; the cause of death was "protein calorie malnutrition," or more colloquially, starvation.

[2] The space was measured as having a width of 4 feet 3 inches, a depth of 8 feet 2 inches, and a height of 7 feet.

-1-

weighing 71 pounds, with matted hair and peeling skin. Defendant testified at trial and claimed that Dianna had always been skinny and that she did not mistreat Dianna. Defendant was the "payee" for Dianna's social security benefits during that time; evidence showed that the vast majority of those benefits were withdrawn in cash by ATM shortly after the checks were deposited.

## I. OTHER-ACTS EVIDENCE

Defendant takes issue with the introduction of evidence regarding Justin's death. Defendant concedes the admissibility of the evidence as an additional alleged incident of domestic violence under MCL 768.27b,[3] but she argues that the trial court should have excluded the evidence under MRE 403 because "the parade of witnesses testifying to the death of Justin . . . was so overly prejudicial that it outweighed any probative value." We disagree.

We review for an abuse of discretion a trial court's decision regarding the admission of evidence. *People v Watkins*, 491 Mich 450, 467; 818 NW2d 296 (2012). "A trial court abuses its discretion when it chooses an outcome falling outside the range of principled outcomes." *Id*.

Intent to cause "serious physical harm or serious mental harm" is an element of first-degree abuse of a vulnerable adult. MCL 750.145n(1). At trial, defendant argued that Dianna was naturally thin or skinny. However, the fact that another individual under defendant's care had died of starvation tended to rebut any argument that Dianna's death was accidental. See MRE 404(b)(1) (providing that similar acts evidence is admissible to prove "absence of mistake"). In addition, the evidence about Justin was relevant to show that defendant had a tendency, in general, to mistreat her vulnerable, adult siblings. Notably, MCL 768.27b allows evidence of character to be used to show action in conformity therewith. *People v Cameron*, 291 Mich App 599, 609; 806 NW2d 371 (2011); see also *People v Mack*, 493 Mich 1, 2-3; 825 NW2d 541 (2012).

Numerous defense witnesses testified about Dianna's tendency to be "skinny" and to vomit. The other-acts evidence was *particularly* relevant in light of this testimony. Indeed, the prosecutor used the other-acts evidence to rebut the defense implication that Dianna had become so thin naturally and to help show that Dianna had been starved. The Supreme Court has explained that evidence is "probative" if it makes the existence of a consequential fact more probable than it would be without the evidence. *People v Feezel*, 486 Mich 184, 197; 783 NW2d 67 (2010). Given the proffered defense, the other-acts evidence made the existence of criminal intent much more probable than it would be without the evidence; therefore, the evidence was *highly* probative.

The Supreme Court has noted that MRE 403 does not prohibit prejudicial evidence but only prohibits evidence that is *unfairly* prejudicial. *Id*. at 198. This unfairness arises if there is a

---

[3] MCL 768.27b(1) allows for the admission of a defendant's past acts of domestic violence "for any purpose for which it is relevant," as long as it is not excluded under MRE 403.

danger that marginally probative evidence will be given undue weight by the jury. *Id*. The evidence at issue here was not marginally probative—it was highly probative.

Defendant contends that having former Detective Ron Wood, Detective Alfred Calhoon, former social worker Ben Kennedy, and Dr. Hernan Gomez testify about Justin was excessive and prejudicial. But these witnesses served different purposes. Wood, as a Kentucky official who attended Justin's autopsy, assisted in authenticating the death certificate and testified about Justin's age and weight and the cause of death listed on the death certificate. Dr. Gomez was qualified as an expert in general medicine and explained that the wording for the cause of death on the death certificate was another way of saying "starvation." He further opined that the death certificate should not have listed Justin's death as "natural." Calhoon testified about defendant's statements regarding Justin and authenticated the recording of her interview that was played for the jury, and we also note that Calhoon's testimony was helpful to the defense in some respects because he admitted that no charges were filed against defendant for Justin's death. Kennedy was a witness *called by the defense* who primarily testified about the lack, in 2009 and before Justin's death, of a substantiation of abuse regarding defendant.

The prosecutor had a reason for presenting different witnesses to testify about Justin's death,[4] and defense counsel *chose* to present Kennedy as a witness. In light of this situation, and in light of the extremely probative nature of the evidence, the mere fact of there being multiple witnesses who testified about Justin does not equate to a situation of unfair prejudice. In addition, the trial court gave a cautionary instruction at the close of testimony. The court's instruction lessened any prejudicial effect of the other-acts evidence. See *Cameron*, 291 Mich App at 612.

Given all the circumstances, it was well within the range of principled outcomes, *Watkins*, 491 Mich at 467, for the trial court to conclude that the probative value of the other-acts evidence was not "substantially outweighed" by the danger of unfair prejudice, MRE 403.

## II. WITNESS INTIMIDATION

Defendant contends that a new trial is warranted because the trial court and the prosecutor, by mentioning the possibility of criminal charges based upon lying, intimidated defendant's daughter, Chelsea Petoskey, into refraining from testifying.

Defendant did not raise this issue below.[5] Accordingly, it is not preserved. *People v Grant*, 445 Mich 535, 546; 520 NW2d 123 (1994); see also *People v Jackson*, 292 Mich App 583, 592; 808 NW2d 541 (2011); *People v Layher*, 238 Mich App 573, 586-587; 607 NW2d 91

---

[4] We note that the three prosecution witnesses identified as problematic by defendant were merely three of 30 witnesses presented by the prosecution during the lengthy trial.

[5] Defendant concedes that "counsel did not object to the trial court's examination, either contemporaneously or at the next available opportunity when the jury was not present." See MRE 614(c).

(1999), aff'd 464 Mich 756 (2001). This Court reviews unpreserved issues for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). In other words, defendant must show that the plain or obvious error "affected the outcome of the lower court proceedings." *Id*. Further, an appellant bears the burden of furnishing a reviewing court with "a record to verify the factual basis of any argument upon which reversal" is predicated. *People v Elston*, 462 Mich 751, 762; 614 NW2d 595 (2000); see also *Petraszewsky v Keeth (On Remand)*, 201 Mich App 535, 540; 506 NW2d 890 (1993).

Defendant has not established any entitlement to relief under the plain-error doctrine. First, she provides no offer of proof concerning why Petoskey did not testify or what Petoskey would have testified about if she had testified. As a result, there is no indication that (1) it was the warning Petoskey received that kept her from testifying, as opposed to some other, unrelated factor; or (2) Petoskey would have provided any testimony that was not already provided by other defense witnesses. Second, this Court has held that a witness may be informed that providing false testimony could result in a charge of perjury. *Layher*, 238 Mich App at 587. Further, such an attempt to inform a witness of possible criminal consequences for failing to testify truthfully does not constitute an attempt to intimidate the witness. See *id*. ("[A] prosecutor may inform a witness that false testimony could result in a perjury charge."); *Culkin v Purkett*, 45 F3d 1229, 1232-1233 (CA 8, 1995) (finding no error when the trial court warned the witness about the perils of perjury); *United States v Whittington*, 783 F2d 1210, 1219 (CA 5, 1986) (holding that the prosecutor warning the witness about perjury was not a violation of the defendant's rights). Here, the prosecutor and the trial court were informing Petoskey of the reality of the law—that she could be charged with perjury or with lying to a police officer if circumstances warranted it. Therefore, in light of *Carines*, *Elston*, and *Layher*, defendant has not established any entitlement to appellate relief.

## III. SENTENCING

Defendant contends that the trial court improperly scored Offense Variable (OV) 3, OV 7, and OV 10 and abused its discretion by imposing unreasonable, disproportionate sentences.[6]

"Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id*. A trial court's findings are clearly erroneous if, "after [this Court] has reviewed the entire record, [this Court is] definitely and firmly convinced" that the trial court made a mistake. *People v Armstrong*, 305 Mich App 230, 237; 851 NW22d 856 (2014).

A sentence that falls outside the guidelines range is reviewed by this Court for reasonableness. *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015). "[T]he proper

---

[6] We note that the guidelines were scored for all three offenses in this case.

inquiry when reviewing a sentence for reasonableness is whether the trial court abused its discretion by violating the principle of proportionality set forth in *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990), which requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender." *People v Steanhouse*, 500 Mich 453, 459-460; 902 NW2d 327 (2017) (quotation marks and citation omitted).

## A. OV 3

MCL 777.33(1)(c) provides for a score of 25 points for OV 3 if "[l]ife threatening or permanent incapacitating injury occurred to a victim." The trial court upheld a score of 25 points for OV 3, stating that Dianna was "losing weight" and "dying." The court said, "And I think we can see by looking at what happened to Justin, in Kentucky, sometime before, what the likely result would have been."

Defendant contends that this score was improper because Dr. Jon Paget testified that Dianna, upon presentation at the hospital after her removal from defendant's home, had somewhat normal laboratory-testing results[7] and did not look like someone about to die immediately. Defendant also refers to Paget's testimony that Dianna did not need "immediate treatment." But the fact that someone is not about to die "immediately" does not mean that person does not have a life-threatening injury. Moreover, Paget clarified that when he said that Dianna did not need immediate treatment, he meant "not at that instant." He clarified that Dianna did have medical conditions that needed treatment. He also stated that her living conditions as they had been described to him (and as supported by the evidence at trial), combined with her emaciated condition, could lead to a fatal infection. More importantly, Dr. Gomez testified that Dianna was "starving" and that she would not have survived without aid. He characterized her as "starving to death." Given this testimony, and given what happened to Justin in defendant's care, the trial court did not clearly err by finding that Dianna had a life-threatening injury. Accordingly, the score of 25 points for OV 3 was proper.

## B. OV 7

MCL 777.37(1)(a) provides for a score of 50 points for OV 7 if "[a] victim was treated with sadism, torture, excessive brutality, or similarly egregious conduct designed to substantially increase the fear and anxiety a victim suffered during the offense." While there are four different categories of behavior that allow a court to score 50 points for this OV, the statute only provides a definition for "sadism." "Sadism" is defined as "conduct that subjects a victim to extreme or prolonged pain or humiliation and is inflicted to produce suffering or for the offender's gratification."

In scoring 50 points for this OV, the trial court expressly relied on the statutory definition of sadism. However, in her brief on appeal, while defendant contends that torture, excessive brutality, and the "other conduct" aspect of the statute do not apply, she does not offer any

---

[7] She did have dehydration and a likely bladder infection.

argument whatsoever that sadism does not apply.[8]   Because the trial court expressly made findings and relied on the "sadism" portion of the statute, defendant's failure to provide any argument challenging the trial court's ruling constitutes an abandonment of the issue.  See *People v Lopez*, 305 Mich App 686, 694; 854 NW2d 205 (2014) ("Defendant's failure to properly argue the merits of the issue results in it being abandoned."); *Hanlin v Saugatuck Twp*, 299 Mich App 233, 249; 829 NW2d 335 (2013) ("When an appellant fails to dispute the basis of the trial court's ruling, the Court need not consider granting the appellant the relief [she] seeks.").

## C.  OV 10

MCL 777.40 provides for a score of 15 points for OV 10 if "[p]redatory conduct was involved."  "Predatory conduct" is defined as "preoffense conduct directed at a victim . . . for the primary purpose of victimization."  MCL 777.40(3)(a).  The court scored this OV at 15 points, stating:

> And the [c]ourt finds . . . predatory conduct in this case where the victim was wholly relying on the [d]efendant for her day-to-day needs, and the [d]efendant kept the victim, she took deliberate steps to isolate the victim from the outside world.

> She went so far as to remodel her house, the [d]efendant's house and created an isolated cell where the victim could not obtain help or otherwise be discovered.

We conclude that the trial court's factual findings are supported by a preponderance of the evidence and are not clearly erroneous.  But regardless of the appropriateness of this score for OV 10, defendant would not be entitled to resentencing.  Even assuming OV 10 were scored at zero points, defendant's total OV score would drop down only to 100 points, which does not result in any change to the sentencing grid in the guidelines.  See MCL 777.64[9]; MCL 769.34(10); *People v Francisco*, 474 Mich 82, 89 n 8; 711 NW2d 44 (2006) ("Where a scoring error does not alter the appropriate guidelines range, resentencing is not required.").

---

[8] Indeed, in her brief, defendant provided the definition of sadism but did not otherwise contend that it does not apply and did not address how the trial court erred in relying on this aspect.

[9] Under MCL 777.64, an OV score of 75 or higher results in a total OV level of VI.  Thus, whether defendant's total OV score was 115 (with OV 10 at 15 points) or 100 (with OV 10 at zero points) makes no difference in this context.  Moreover, defendant at sentencing argued that OV 10 should have been scored at 10 points.  Thus, defendant on appeal is precluded from taking a contrary position.  See *Kloian v Domino's Pizza, LLC*, 273 Mich App 449, 455 n 1; 733 NW2d 766 (2006).

## D. PROPORTIONALITY

The minimum sentencing guidelines produced a range of 43 to 86 months for unlawful imprisonment and for first-degree abuse of a vulnerable adult. For embezzlement, the guidelines produced a range of 7 to 23 months. The court sentenced defendant to two concurrent prison terms of 10 to 15 years for unlawful imprisonment and first-degree abuse of a vulnerable adult, to be served consecutively to a prison term of 40 to 60 months for embezzlement.[10] Accordingly, the court imposed out-of-guidelines sentences for each conviction. Indeed, the minimum and maximum sentences imposed were the highest allowed by law. MCL 750.145n(1); MCL 750.349b(2); MCL 750.174a(4); MCL 769.34(2)(b). Of note, when reviewing the proportionality of consecutive sentences, we do not look at the aggregate or cumulative effect of the sentences; instead, "a proportionality challenge to a given sentence must be based on the individual term imposed." *People v Norfleet*, 317 Mich App 649, 663; 897 NW2d 195 (2016).

At sentencing, the prosecutor argued vehemently for a sentence above the guidelines, emphasizing that defendant had abused Dianna for many years. The trial court discussed the principle of proportionality and stated that the guidelines for this case "are not reasonable" as "applied to [this] particular [d]efendant." The court noted that defendant kept Dianna imprisoned for many years. The court also mentioned Justin's death and stated, "[T]he [d]efendant really showed no concern for the physical wellbeing" of Dianna. The court stated, "The guidelines do not consider such profound neglect or the pattern of neglect, and this factor warrants an upward departure." The court also opined that the 15 points assessed for "predatory conduct" in OV 10 were "inadequate to reflect the extreme vulnerability of this victim who wholly relied on [d]efendant for her care." The court mentioned the bucket of waste and the feces found in Dianna's room and noted that the guidelines did not account for the "squalid conditions in which the victim was found." The court continued:

> The evidence shows that you imprisoned your sister, that you made active efforts to conceal her from the outside world, and you prevented her from obtaining help.
>
> These were not crimes of inadvertence or casual negligence. The evidence before the [c]ourt establishes that you planned and thought about these crimes,

---

[10] In Michigan, "concurrent sentencing is the norm," and "[a] consecutive sentence may be imposed only if specifically authorized by statute." *People v Brown*, 220 Mich App 680, 682; 560 NW2d 80 (1996). Here, defendant was convicted of the charge of fraudulently obtaining a vulnerable adult's property, where the value of the property obtained was more than $1,000 but less than $20,000, MCL 750.174a(4). Under these circumstances, a consecutive sentence was specifically authorized under MCL 750.174a(13). No doubt recognizing the statutory authorization for a consecutive sentence, defendant makes no argument on appeal challenging the legal possibility of consecutive sentencing.

and how you could avoid detection. Such planning and deliberation gives this [c]ourt cause to depart from the guidelines. . . .

Your description of the offense, Ms. Lawson, minimizes your criminal responsibility and it really suggests that you lack insight into your own criminal behavior. The [c]ourt cannot find that you are a likely candidate for rehabilitation.

The court noted that two of the offenses involved violations of statutes that "are directed towards the protection of vulnerable adults" and stated, "[Y]ou, Ms. Lawson, are the reason why we have these laws." It mentioned the irony of the fact that defendant would be well-fed in prison and would have her medical needs addressed. The court concluded that "the scope of [defendant's] cruelty justifies imposing the maximum sentence that . . . the laws allow."

Defendant argues that the trial court imposed an unreasonable sentence and failed to justify the extent of the departures from the guidelines. As noted, "the proper inquiry when reviewing a sentence for reasonableness is whether the trial court abused its discretion by violating the principle of proportionality set forth in [*Milbourn*, 435 Mich at 636], which requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender." *Steanhouse*, 500 Mich at 459-460 (quotation marks and citation omitted).

The facts of this case were exceptionally egregious. Dianna, an extremely vulnerable person, was starved and locked in a small, windowless room with a bucket for her to use as a toilet. Photographs show Dianna's extreme thinness and the appalling state of her skin. Dianna's dental hygiene was deplorable and she ended up needing to have her teeth pulled and dentures fitted. A reasonable inference from all the evidence, including the death of Justin, is that defendant had been gravely mistreating Dianna for an extended period and appropriating her Social Security payments. The trial court acted eminently reasonably by concluding that defendant's crimes warranted the maximum sentences allowed by law. In addition, the court, contrary to defendant's argument, gave many reasons for imposing a sentence above the advisory guidelines range. Defendant emphasizes her lack of a criminal record, but this clean record is overshadowed by the "profound . . . pattern of neglect," the "squalid conditions in which the victim was found," defendant's planning, defendant's attempt to minimize her behavior, the extreme vulnerability of Dianna, and the "scope of [defendant's] cruelty." The trial court "adequately explain[ed] why" the sentences it imposed were "more proportionate than . . . different sentence[s] within the guidelines would have been." *People v Dixon-Bey*, 321 Mich App 490, 525; 909 NW2d 458 (2017), oral argument gtd on the application 501 Mich 1066 (2018).

Defendant contends that the court should not have considered the alleged inability to rehabilitate defendant in departing from the guidelines because this was not an objective and verifiable factor for departure. But the requirement for "objective and verifiable" reasons for departing from the guidelines was tied to the requirement for "substantial and compelling" reasons for departure, see *People v Anderson*, 298 Mich App 178, 183; 825 NW2d 678 (2012), and courts are no longer required to articulate "substantial and compelling reasons" to impose a sentence above the advisory guidelines range, *People v Walden*, 319 Mich App at 344, 351; 901

NW2d 142 (2017). Defendant also contends that the court did not give sufficient deference to the guidelines and essentially disregarded them. In *Lockridge*, 498 Mich at 365, the Court stated that "a sentencing court must determine the applicable guidelines range and take it into account when imposing a sentence." Here, the trial court did consider the applicable guidelines range and thought the range did not adequately relate to the crimes defendant committed. Given all the circumstances, the court did not abuse its discretion in sentencing defendant; the sentences were reasonable.

Affirmed.

/s/ Brock A. Swartzle
/s/ Michael J. Kelly
/s/ Jonathan Tukel