KLOIAN v DOMINO'S PIZZA, LLC

Docket No. 263882. Submitted December 5, 2006, at Lansing. Decided December 28, 2006, at 9:20 a.m.

J. Edward Kloian brought an action in the Washtenaw Circuit Court against Domino's Pizza, L.L.C., seeking damages related to the breach of a lease for which the plaintiff was the lessor. Shortly before trial, the parties' attorneys engaged in settlement negotiations. A settlement offer and an acceptance occurred through a series of e-mail exchanges by the attorneys. After the plaintiff's attorney reviewed documents reflecting the settlement agreement, the attorneys exchanged further e-mails concerning the addition of a mutual release to the settlement. Both parties eventually moved for approval of the settlement. The court, Timothy P. Connors, J., entered an order enforcing the settlement agreement originally entered into and dismissing the plaintiff's claims with prejudice. The plaintiff appealed.

The Court of Appeals *held*:

1. The parties agreed on the essential terms of the settlement. An attorney has the apparent authority to settle a lawsuit on behalf of his or her client. The e-mail from the plaintiff's attorney constituted a settlement offer, and the e-mail from the defendant's attorney constituted an acceptance.

2. The trial court did not err by enforcing the original settlement agreement rather than the modified agreement. While the parties, through the subsequent e-mails of their attorneys, consented to modify the original agreement, the modified agreement was technically unenforceable under former MCR 2.507(H), now MCR 2.507(G). That court rule is in the nature of a statute of frauds. It provides that an agreement respecting the proceedings in an action, such as a settlement agreement, that either party subsequently denies is not binding unless it was made in open court or is supported by evidence that is in writing and subscribed by the party against whom the agreement is offered or that party's attorney. Subscription requires more than a signature; it requires that the signature be appended at the bottom of the writing. The e-mail from the plaintiff's attorney requesting a mutual release, which was a request for a modification of the agreement, did not

have the attorney's signature at the bottom. Because the modified agreement was unenforceable under the court rule, the original settlement agreement remained enforceable.

Affirmed.

1. STATUTE OF FRAUDS — SETTLEMENT AGREEMENTS — E-MAILS.

An agreement or consent between the parties or their attorneys respecting the proceedings in an action, including a settlement agreement, that either party subsequently denies is not binding unless it was made in open court or is supported by evidence that is in writing and subscribed by the party against whom the agreement is offered or that party's attorney; subscription requires that a signature be appended at the bottom of the writing (former MCR 2.507[H], now MCR 2.507[G]).

2. SETTLEMENT AGREEMENTS — MODIFICATIONS.

A settlement agreement originally reached by the parties remains enforceable if a modification of the settlement agreement is technically unenforceable.

*Michael A. Mixer* for the plaintiff.

*Conlin, McKenney & Philbrick, P.C.* (by *Neil J. Juliar*), for the defendant.

Before: MARKEY, P.J., and SAAD and WILDER, JJ.

PER CURIAM. Plaintiff appeals as of right the trial court's order enforcing a settlement agreement between the parties and dismissing plaintiff's claims against defendant with prejudice. We conclude that the record establishes there was an enforceable settlement agreement between the parties. Consistently with our conclusion, we affirm.

I

On August 18, 1994, plaintiff J. Edward Kloian, doing business as Arbor Management Company, entered into a lease agreement with defendant Domino's Pizza, LLC.

On May 14, 2003, plaintiff, the lessor, initiated this action against defendant, the lessee, alleging that defendant had breached the lease by failing to pay certain amounts owing for rent, holdover rent, taxes, insurance, maintenance and repair costs, late fees, and other damages related to the removal of equipment.

In March 2005, shortly before the trial date scheduled in this matter, the parties engaged in settlement discussions through their attorneys. Through a series of e-mail messages exchanged between plaintiff's attorney and defendant's attorney, the attorneys agreed that defendant would pay plaintiff $48,000 to settle the lawsuit in exchange for a release of all possible claims. On March 18, 2005, plaintiff's attorney sent an e-mail to defendant's attorney, stating: "I confirmed with Mr. Kloian that he will accept the payment of $48,000 in [ex]change for a dismissal with prejudice of all claims and a release as [sic, of] all possible claims." In response, also on March 18, 2005, defendant's attorney wrote: "Domino's accepts your settlement offer . . . ."

Documents reflecting the agreement were prepared by defendant's attorney and sent to plaintiff's attorney for his review. After review of these documents, on March 21, 2005, plaintiff's attorney sent an e-mail to defendant's attorney stating: "I reviewed your documents and find them to be in order. However, Mr. Kloian would like the protection of a mutual release." On March 28, 2005, defendant's attorney sent a response stating: "I have the check and Domino's agreement to a mutual release. I need to revise the prior release and get it to you."

On May 18, 2005, defendant moved to enforce the settlement agreement. Defendant asserted that on March 18, 2005, the parties established the terms of the settlement agreement. Plaintiff also moved the trial

court to approve the settlement and dismiss the case. Plaintiff's motion stated, in part:

> 1. On or about March 18, 2005, Plaintiff and Defendant through their counsel reached a settlement in this matter.

> 2. A proposed Order of Settlement was prepared by counsel for Plaintiff and approved by counsel for Defendant.

> 3. Despite advice of counsel, Plaintiff has refused to sign the approved Settlement Agreement.

The trial court found that the parties had entered into a binding settlement agreement on March 18, 2005. The trial court issued an order enforcing the settlement agreement and dismissing plaintiff's claims with prejudice.

## II

### A

Plaintiff first contends on appeal that the trial court erred in enforcing the settlement agreement because the parties had not reached an agreement on essential terms. We disagree.

The existence and interpretation of a contract are questions of law reviewed de novo. *Bandit Industries, Inc v Hobbs Int'l, Inc (After Remand)*, 463 Mich 504, 511; 620 NW2d 531 (2001). "An agreement to settle a pending lawsuit is a contract and is to be governed by the legal principles applicable to the construction and interpretation of contracts." *Walbridge Aldinger Co v Walcon Corp*, 207 Mich App 566, 571; 525 NW2d 489 (1994). "Before a contract can be completed, there must be an offer and acceptance. Unless an acceptance is unambiguous and in strict conformance with the offer, no contract is formed." *Pakideh v Franklin Commercial*

*Mortgage Group, Inc*, 213 Mich App 636, 640; 540 NW2d 777 (1995). Further, a contract requires mutual assent or a meeting of the minds on all the essential terms. *Burkhardt v Bailey*, 260 Mich App 636, 655; 680 NW2d 453 (2004).

On March 18, 2005, plaintiff's attorney sent an e-mail to defendant's attorney stating that plaintiff would "accept the payment of $48,000 in change [sic] for a dismissal with prejudice of all claims and a release as [sic] all possible claims." An attorney has the apparent authority to settle a lawsuit on behalf of his or her client. *Nelson v Consumers Power Co*, 198 Mich App 82, 89-90; 497 NW2d 205 (1993). The e-mail from plaintiff's attorney constituted a settlement offer. "An offer is defined as 'the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it.' " *Eerdmans v Maki*, 226 Mich App 360, 364; 573 NW2d 329 (1997) (citation omitted). In response, defendant's attorney sent the following e-mail to plaintiff's attorney:

> Domino's accepts your settlement offer contained in the message below. I spoke with the court, advised it of the settlement and confirmed that we need not appear in court in connection with the settlement. I have ordered a settlement draft from Domino's in the amount of $48,000, made payable jointly to Mr. Kloian and your firm. I will forward a stipulation and order for dismissal with prejudice and a release for approval by you and Mr. Kloian respectively. You should have them in the next few days. Please call with any questions. I'm pleased we were able to resolve this matter without trial. -Neil

The e-mail from defendant's attorney constituted an acceptance of plaintiff's settlement offer. " ' "[A]n acceptance sufficient to create a contract arises where the individual to whom an offer is extended manifests an

intent to be bound by the offer, and all legal consequences flowing from the offer, through voluntarily undertaking some unequivocal act sufficient for that purpose." ' " *Blackburne & Brown Mortgage Co v Ziomek,* 264 Mich App 615, 626-627; 692 NW2d 388 (2004) (citations omitted). In the e-mail, defendant expressed the intent to be bound by plaintiff's offer and all the legal consequences flowing from the offer. Moreover, defendant voluntarily offered to draft a settlement agreement to reflect the terms of plaintiff's offer. There clearly was a meeting of the minds on the essential terms of the agreement. The essential terms were the payment of $48,000 by defendant in exchange for a dismissal with prejudice and a release. " 'A meeting of the minds is judged by an objective standard, looking to the express words of the parties and their visible acts, not their subjective states of mind.' " *Kamalnath v Mercy Mem Hosp Corp,* 194 Mich App 543, 548; 487 NW2d 499 (1992) (citations omitted). The language in plaintiff's settlement offer indicated that plaintiff would accept $48,000 from defendant to settle the lawsuit, and, in exchange, he would promise to release all possible claims against defendant. On the basis of this interpretation of plaintiff's offer, we conclude that defendant's acceptance was unambiguous and in strict conformance with plaintiff's offer. Therefore, defendant's acceptance was sufficient to create a contract between the parties on March 18, 2005. *Pakideh, supra* at 640. There was a meeting of the minds on the essential terms.

The parties subsequently agreed to modify the contract to include a mutual release. A contract, including a written contract, may be modified orally or in writing. *Chatham Super Markets, Inc v Ajax Asphalt Paving, Inc,* 370 Mich 334, 339; 121 NW2d 836 (1963). The modification must be by mutual consent. *Adell Broad-*

*casting Corp v Apex Media Sales, Inc,* 269 Mich App 6, 11; 708 NW2d 778 (2005). "The mutuality requirement is satisfied where a modification is established through clear and convincing evidence of a written agreement, oral agreement, or affirmative conduct establishing mutual agreement to waive the terms of the original contract." *Quality Products & Concepts Co v Nagel Precision, Inc,* 469 Mich 362, 373; 666 NW2d 251 (2003). The parties consented to modify the original contract. Plaintiff requested a mutual release in a March 21, 2005, e-mail, and, in a March 28, 2005, e-mail, defendant consented to that request.[1]

---

[1] Furthermore, plaintiff's position on appeal is untenable because it is contrary to the position he took in the lower court. "A party may not take a position in the trial court and subsequently seek redress in an appellate court that is based on a position contrary to that taken in the trial court." *Living Alternatives for the Developmentally Disabled, Inc v Dep't of Mental Health,* 207 Mich App 482, 484; 525 NW2d 466 (1994). On May 16, 2005, plaintiff's attorney filed a motion in the lower court, which stated that "[o]n or about March 18, 2005, Plaintiff and Defendant through their counsel reached a settlement in this matter." Plaintiff's attorney signed the motion, which certified that the document was well grounded in fact and was warranted by existing law. MCR 2.114(D); *Attorney General v Harkins,* 257 Mich App 564, 575-576; 669 NW2d 296 (2003). "[A] longstanding principle derived from agency law is that a client is bound by the actions and inactions of that client's attorney that occurred within the scope of the attorney's authority." *Carrier Creek Drain Drainage Dist v Land One, LLC,* 269 Mich App 324, 331; 712 NW2d 168 (2005). Plaintiff's attorney had the authority to file the motion, and, therefore, plaintiff was bound by the representations made by his attorney in the motion. We note that, during the lower court proceedings and on appeal, plaintiff asserted that his attorney had ignored him and that his attorney had failed to act in his best interests in resolving this matter. However, these assertions are immaterial to our determination of whether the parties reached a settlement. See *Nelson, supra* at 90, which stated that " 'a third party who reaches a settlement agreement with an attorney employed to represent his client in regard to the settled claim is generally entitled to enforcement of the settlement agreement *even if the attorney was acting contrary to the client's express instructions.*' " (Citation omitted; emphasis added.)

B

Plaintiff next contends that the trial court erred in enforcing the settlement agreement because evidence of the agreement was not in writing, signed by plaintiff or his attorney as required by MCR 2.507(H).[2] We disagree.

The construction and application of a court rule are questions of law that this Court reviews de novo on appeal. *Wickings v Arctic Enterprises, Inc,* 244 Mich App 125, 133; 624 NW2d 197 (2000). A contract for the settlement of pending litigation that fulfills the requirements of contract principles will not be enforced unless the agreement also satisfies the requirements of MCR 2.507(H). *Michigan Mut Ins Co v Indiana Ins Co,* 247 Mich App 480, 484-485; 637 NW2d 232 (2001). When this case was decided, MCR 2.507(H) provided:

> An agreement or consent between the parties or their attorneys respecting the proceedings in an action, subsequently denied by either party, is not binding unless it was made in open court, or unless evidence of the agreement is *in writing, subscribed by the party against whom the agreement is offered or by that party's attorney.* [Emphasis added.]

By its terms, MCR 2.507(H) is in the nature of a statute of frauds.[3] Statutes of frauds "exist[] for the purpose of preventing fraud or the opportunity for fraud, and not as an instrumentality to be used in the

---

[2] This provision is now found at MCR 2.507(G).

[3] Michigan's principal statute of frauds is MCL 566.132, which provides, in pertinent part:

(1) In the following cases an agreement, contract, or promise is void unless that agreement, contract, or promise, or a note or memorandum of the agreement, contract, or promise is *in writing and signed* with an authorized signature by the party to be charged with the agreement, contract, or promise:

aid of fraud or prevention of justice." *Lakeside Oakland*

---

(a) An agreement that, by its terms, is not to be performed within 1 year from the making of the agreement.

(b) A special promise to answer for the debt, default, or misdoings of another person.

(c) An agreement, promise, or undertaking made upon consideration of marriage, except mutual promises to marry.

(d) A special promise made by a personal representative to answer damages out of his or her own estate.

(e) An agreement, promise, or contract to pay a commission for or upon the sale of an interest in real estate.

(f) An assignment of things in action, whether intended as a transfer for sale, for security, or otherwise.

(g) An agreement, promise, contract, or warranty of cure relating to medical care or treatment. This subdivision does not affect the right to sue for malpractice or negligence.

(2) An action shall not be brought against a financial institution to enforce any of the following promises or commitments of the financial institution unless the promise or commitment is *in writing and signed* with an authorized signature by the financial institution:

(a) A promise or commitment to lend money, grant or extend credit, or make any other financial accommodation.

(b) A promise or commitment to renew, extend, modify, or permit a delay in repayment or performance of a loan, extension of credit, or other financial accommodation.

(c) A promise or commitment to waive a provision of a loan, extension of credit, or other financial accommodation. [Emphasis added.]

MCL 566.106 provides, in relevant part:

No estate or interest in lands ... shall hereafter be created, granted, assigned, surrendered or declared, unless by act or operation of law, or by a deed or conveyance *in writing, subscribed* by the party creating, granting, assigning, surrendering or declar-

*Dev, LC v H & J Beef Co*, 249 Mich App 517, 526; 644 NW2d 765 (2002). Whether a statute of frauds bars enforcement of a contract is a question of law that we review de novo. *Kelly-Stehney & Assoc, Inc v Mac-Donald's Industrial Products, Inc (On Remand)*, 265 Mich App 105, 110; 693 NW2d 394 (2005).

Michigan courts construe court rules in the same way that they construe statutes. *Marketos v American Employers Ins Co*, 465 Mich 407, 413; 633 NW2d 371 (2001). "Well-established principles guide this Court's statutory [or court rule] construction efforts. We begin our analysis by consulting the specific . . . language at issue." *Bloomfield Charter Twp v Oakland Co Clerk*, 253 Mich App 1, 10; 654 NW2d 610 (2002). This Court gives effect to the rule maker's intent as expressed in the court rule's terms, giving the words of the rule their plain and ordinary meaning. See *Willett v Waterford Charter Twp*, 271 Mich App 38, 48; 718 NW2d 386 (2006). If the language poses no ambiguity, this Court need not look outside the rule or construe it, but need only enforce the rule as written. See *Ayar v Foodland Distributors*, 472 Mich 713, 716; 698 NW2d 875 (2005). This Court does not interpret a court rule in a way that renders any language surplusage. See *Pohutski v City of Allen Park*, 465 Mich 675, 684; 641 NW2d 219 (2002).

---

ing the same, or by some person thereunto by him lawfully authorized by writing. [Emphasis added.]

Additionally, MCL 566.108 provides, in relevant part:

Every contract for the leasing for a longer period than 1 year, or for the sale of any lands, or any interest in lands, shall be void, unless the contract, or some note or memorandum thereof be *in writing, and signed* by the party by whom the lease or sale is to be made, or by some person thereunto by him lawfully authorized in writing[.] [Emphasis added.]

"Subscribed" is not defined in MCR 2.507(H). "Subscribe" means "to append, as one's signature, *at the bottom of a document* or the like; sign." *Random House Webster's College Dictionary* (2001) (emphasis added). The Uniform Electronic Transactions Act provides: "If a law requires a signature, an electronic signature satisfies the law." MCL 450.837(4). An "electronic signature" is "an electronic sound, symbol, or process attached to or logically associated with a record and executed or adopted by a person with the intent to sign the record." MCL 450.832(h). However, MCR 2.507(H) does not require a "signature"; it requires a "writing, *subscribed*" by the party against whom enforcement is sought. MCR 2.507(H) (emphasis added). "Subscribed" is a different word from "signed." Since some statutes of frauds require an agreement "in writing and signed," MCL 566.108 and 566.132, and others require a "writing, subscribed," MCR 2.507(H) and MCL 566.106, we must treat "in writing and signed" differently from a "writing, subscribed."

The original settlement agreement, embodied in the March 18, 2005, e-mail messages, satisfies the subscription requirement of MCR 2.507(H). The March 18, 2005, e-mail containing the terms of the settlement offer was subscribed by plaintiff's attorney because he typed, or appended, his name at the end of the e-mail message. Likewise, the March 18, 2005, e-mail from defendant's attorney containing the acceptance of the offer was subscribed because it, too, contained defendant's attorney's name at the end of the e-mail message.

The modification of the settlement agreement, however, did not satisfy the requirement because there was no "evidence of the agreement ... in writing, subscribed by the party against whom the agreement is

offered or by that party's attorney." MCR 2.507(H). The March 21, 2005, e-mail from plaintiff's attorney, requesting a mutual release, has plaintiff's attorney's name *at the top,* in the heading of the e-mail. Subscription requires a signature *at the bottom.* See *Random House Webster's College Dictionary* (2001).

Therefore, the original settlement agreement, and not the modified settlement agreement, complies with MCR 2.507(H). The trial court correctly enforced the original settlement agreement because the modified settlement agreement is unenforceable under MCR 2.507(H). We hold that if a modification of a settlement agreement is technically unenforceable under MCR 2.507(H), the original settlement agreement remains enforceable.[4]

---

[4] Other jurisdictions have reached a similar conclusion. In *Daniel Boone Complex, Inc v Furst,* 43 NC App 95; 258 SE2d 379 (1979), the court held that a modification of a consent judgment was unenforceable under the statute of frauds. The court stated: "The modification agreement is unenforceable because of failure to satisfy the requirement of the Statute of Frauds, . . . and *the parties' original agreement . . . was still in effect.* Restatement of Contracts § 223 (1932)." *Id.* at 108 (emphasis added).

In *Maloney v PCRE, LLC,* 68 Conn App 727, 742; 793 A2d 1118 (2002), the appellate court described actions taken by the lower court:

> The court did not award damages for the defendants' breach of the modified contract. The court held that the modified contract was unenforceable because the defendants had not satisfied the condition precedent for the modified agreement. . . . The court permitted the plaintiff to recover under the original agreement between the parties.

In *Fubar, Inc v Turner,* 944 SW2d 64, 67 (Tex App, 1997), the court discussed the failure of the assignor of an interest in the future revenues derived from the manufacture, distribution, and sale of an insecticide to respond to a letter from the inventor of the insecticide. The court stated that his

> failure to respond to this letter does not prove the necessary elements of consideration, mutuality, and a meeting of the minds. A unilateral declaration in a letter does not alter the

Finally, plaintiff contends on appeal that the trial court erred in entering an order that did not comport with the terms of the parties' amended settlement agreement. We disagree.

Courts are required to enforce unambiguous contracts according to their terms. *Quality Products, supra* at 370; *Wilkie v Auto-Owners Ins Co,* 469 Mich 41, 51-52; 664 NW2d 776 (2003). "A court cannot 'force' settlements upon parties," *Henry v Prusak,* 229 Mich App 162, 170; 582 NW2d 193 (1998), or "enter an order pursuant to the consent of the parties which deviates in any material respect from the agreement of the parties," *Scholnick's Importers-Clothiers, Inc v Lent,* 130 Mich App 104, 112; 343 NW2d 249 (1983). The trial court's order complied with the parties original settlement agreement reached on March 18, 2005. Because the amended settlement agreement is rendered unenforceable by MCR 2.507(H), the trial court's order correctly conformed to the parties' original March 18, 2005, settlement agreement.

Affirmed.

---

binding terms of the original contract. As a matter of law, there was no modification of the original contract. [*Id.*]

Thus, if a contract modification fails, the original contract remains in force. Similarly, in *Neiss v Ehlers*, 135 Or App 218, 222; 899 P2d 700 (1995), the court stated: "[W]e agree with plaintiff that the 'fact that the parties * * * were unable to agree on a new substitute Agreement does not abrogate the original Agreement of 1989.' The failure to agree on a modification simply left the existing terms intact."

In *Guild Mgt Co v Oxenhandler*, 541 SW2d 687, 692 (Mo App, 1976), a real estate broker brought an action to recover a commission pursuant to an agreement. The court held that because there was no meeting of the minds with regard to a letter that the defendants claimed constituted a modification of the broker's fee contract, there was no contract of modification, and consequently the plaintiff was entitled to its fee when the defendants sold their property.