*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MAHER DABISH,

      Plaintiff/Counterdefendant-Appellant,

v

TAREK GAYAR, SHAMMAMI JAVANTE, FRANK AWDISH, and LV PETRO, LLC,

      Defendants/Counterplaintiffs/Third-Party Plaintiffs-Appellees,

and

MARK DABISH, INC.,

      Third-Party Defendant-Appellant.

FOR PUBLICATION
September 15, 2022
9:05 a.m.

No. 358727
Oakland Circuit Court
LC No. 2020-183025-CB

Before: CAVANAGH, P.J., and GARRETT and YATES, JJ.

YATES, J.

To reach an enforceable settlement, the competing parties in litigation must come to terms on all material components of an agreement. Here, the four members of LV Petro, LLC (LV Petro) found themselves in the maw of litigation as a result of a bitter impasse. Perhaps the lawsuit was inevitable after plaintiff, Maher Dabish, and his company, Mark Dabish, Inc. (MDI), pushed their way into the LV Petro business venture with defendants. But as the case dragged on, defendants lost their appetite for legal wrangling and attempted to buy out Dabish by offering him $150,000 for his membership interest in LV Petro and agreeing to honor a lease for the MDI-owned Dabish Building in Lathrup Village. Dabish at first seemed interested in the offer, but he ultimately balked at signing the settlement documents negotiated by the competing parties' attorneys. In response, defendants filed a motion to enforce the purported settlement agreement, and the trial court granted that motion. This appeal contesting enforcement of the purported settlement agreement followed. Because we cannot conclude that the parties reached an enforceable settlement, we reverse.

## I. FACTUAL BACKGROUND

It goes without saying that business ventures among family members are fraught with peril. Plaintiff Dabish owned a gas station and convenience store in Lathrup Village that his relatives—defendants Shammami Javente and Frank Awdish (along with their business partner, defendant Tarek Gayar)—wanted to buy. Initially, Dabish offered to sell defendants that business housed in the Dabish Building as well as a liquor license for the convenience store for $500,000. But when Dabish learned that his relatives had a larger development project in mind that included the Dabish Building and an adjacent parcel of land, Dabish pursued an interest in the proposed development. As a result, Dabish and the three defendants formed LV Petro as a limited liability company, and they all intended to become members. Disagreements arose, though, and the development project stalled. Eventually, in order to induce Dabish to sign the LV Petro operating agreement, LV Petro entered into a lease for the Dabish Building, thereby making Dabish's company—defendant MDI—the landlord and LV Petro its tenant.

Through conflict, COVID, and a capital call, the defendants continued to operate LV Petro with plaintiff Dabish until they could no longer tolerate working with him. Then Dabish chose to sue defendants for minority member oppression, appointment of a receiver, and dissolution of LV Petro. That, in turn, prompted defendants to sue for peace. Settlement discussions ensued through counsel, and those talks bore fruit. Thus, the attorneys began drafting settlement documents in the forms of a "Settlement Agreement and Release" and a "Membership Interest Purchase Agreement" for Dabish's interest in LV Petro. The contemplated terms of the settlement were straightforward: Dabish would receive $150,000 in two staggered payments for his interest, and LV Petro would remain bound by its lease with Dabish's company, MDI. As the attorneys worked on the settlement documents, Dabish's attorney suggested minor changes, and defendants' attorneys tried to address Dabish's concerns through an exchange of e-mail correspondence in June and July of 2021.

Despite the efforts of defendants' attorneys, plaintiff Dabish refused to sign the settlement documents and broke off negotiations. On July 22, 2021, defendants filed a motion to enforce the purported settlement agreement. The trial court heard oral arguments on the motion on August 11, 2021, and then rendered a ruling from the bench "that there has been a Settlement Agreement with respect to this lawsuit as it relates to the plaintiff's membership interest in LVP, and that it was all encompassing with respect to settling this lawsuit." The trial court subsequently memorialized its ruling in a written order on August 11, 2021, and thereafter denied a motion for clarification and/or reconsideration in an order on September 9, 2021. Then the dispute really became acrimonious.

In response to a motion from defendants to hold plaintiff Dabish in contempt of court, the trial court conducted a hearing on September 15, 2021. Defendants insisted that Dabish violated the trial court's order by refusing to sign the settlement documents, whereas Dabish contended that he had no duty to sign the documents and the trial court had no authority to order him to sign. The trial court ultimately stated that "this case has to come to an end, and Mr. Dabish, you are to sign the agreement and you have every right to appeal my decisions." The trial court then explained to Dabish that, "[i]f you fail to do so, Sir, you will be in contempt of this court's order directing you to sign the Settlement Agreement and then you will face contempt sanctions." Dabish promptly sought leave to appeal, which we granted. *Maher Dabish v Tarek Gayar*, unpublished order of the Court of Appeals, entered October 29, 2021 (Docket No. 358727). Thus, we must now determine whether the trial court correctly ruled that the parties arrived at an enforceable settlement.

## II. LEGAL ANALYSIS

Plaintiff Dabish contends on appeal that the trial court erred in concluding that the parties entered into an enforceable settlement agreement. "A settlement agreement is a binding contract." *Reicher v SET Enterprises, Inc,* 283 Mich App 657, 665; 770 NW2d 902 (2009). "The existence and interpretation of a contract are questions of law reviewed de novo." *Kloian v Domino's Pizza, LLC*, 273 Mich App 449, 452; 733 NW2d 766 (2006). *Id.* To settle a lawsuit, " 'there must be an offer and acceptance.' " *Id.* " 'Unless an acceptance is unambiguous and in strict conformance with the offer, no contract is formed.' " *Id.* "Further, a contract requires mutual assent or a meeting of the minds on all the essential terms." *Id.* Relying upon these bedrock principles, plaintiff insists that he did not enter into an enforceable settlement agreement. We agree.

When a "case involves an agreement to settle" pending litigation, "it must comply" with MCR 2.507(G) "to be enforceable."[1] *Mich Mut Ins Co v Indiana Ins Co*, 247 Mich App 480, 483; 637 NW2d 232 (2001). Under MCR 2.507(G), "[a]n agreement or consent between the parties or their attorneys respecting the proceedings in an action is not binding unless it was made in open court, or unless evidence of the agreement is in writing, subscribed by the party against whom the agreement is offered or by that party's attorney." That rule applies to a "contract for the settlement of pending litigation," so the purported settlement in this matter is only enforceable if it "satisfies the requirements" of MCR 2.507(G). *Kloian*, 273 Mich App at 456. The purported settlement in this case was not "made in open court," see MCR 2.507(G), so the purported settlement can only be enforced if it was "in writing, subscribed by the party against whom the agreement is offered or by that party's attorney." See *id.* The parties' attorneys exchanged a host of e-mails in an effort to settle the matter, but the two key documents—the "Settlement Agreement and Release" and the "Membership Interest Purchase Agreement"—were never signed by plaintiff Dabish before the trial court granted defendants' motion to enforce the purported settlement on August 11, 2021. As we have held, the word "subscribed" in MCR 2.507(G) "requires a signature *at the bottom*." *Kloian*, 273 Mich App at 460 (emphasis in original). Because no version of the "Settlement Agreement and Release" or the "Membership Interest Purchase Agreement" bears Dabish's signature at the bottom, neither of those documents is enforceable against Dabish by dint of MCR 2.507(G).

Aside from defendants' failure to satisfy the requirements of MCR 2.507(G), their view of an enforceable settlement agreement founders upon basic principles of contract formation. An enforceable settlement depends on an offer and an acceptance that is " 'unambiguous and in strict conformance with the offer[.]' " *Kloian*, 273 Mich App at 452. Without question, defendants made a perfectly valid offer to plaintiff Dabish to settle the pending litigation. But there is nothing in the e-mail correspondence demonstrating that Dabish ever accepted defendants' offer. The attorney for Dabish never responded to the final e-mail from defendants' counsel on July 1, 2020, offering to add a sentence to the settlement agreement and asking that Dabish's attorney "discuss this with your client and let's get this done." The phrase "let's get this done" bespeaks a choice

---

[1] Many of our prior opinions on this point refer to MCR 2.507(H), rather than MCR 2.507(G). The court rule was amended in 2006 and, as a result, MCR 2.507(H) became MCR 2.507(G) without any change in the language of the rule. See 474 Mich cclx; *Kloian*, 273 Mich App at 456 n 2.

for Dabish to assent in order to complete the agreement. Neither Dabish nor his attorney furnished that assent, so Dabish's acceptance of the defendants' offer never occurred.

Finally, the fact that the trial court (at the behest of defendants) had to order plaintiff Dabish to sign the settlement documents weeks after the trial court ordered enforcement of the purported settlement agreement lends credence to Dabish's claim that the parties never reached a settlement. The purpose of MCR 2.507(G), which "is in the nature of a statute of frauds[,]" *Kloian*, 273 Mich App at 456, is to take the guesswork out of settling a pending lawsuit. Under MCR 2.507(G), the settlement must exist in a form that indisputably reflects a final agreement of the parties. That is, the settlement must either be set forth on the record in open court or memorialized in a document subscribed by the party challenging the existence of an enforceable settlement. Here, the trial court had neither form of agreement when it enforced the purported settlement on August 11, 2021. The subsequent battling over the terms of the purported settlement that broke out after August 11, 2021, lays bare the danger in declaring a settlement without indisputable proof of the terms on which the parties settled. Thus, we conclude that the trial court erred in enforcing the purported settlement agreement against plaintiff Dabish and his company, MDI. Additionally, because the parties never reached an enforceable settlement agreement, the trial court erred in compelling Dabish to sign the settlement documents presented to him by defendants.[2] *Henry v Prusak*, 229 Mich App 162, 170; 582 NW2d 193 (1998) ("A court cannot 'force' settlements upon parties.").

Reversed and remanded. We do not retain jurisdiction.

/s/ Christopher P. Yates
/s/ Mark J. Cavanagh
/s/ Kristina Robinson Garrett

---

[2] Defendants suggest that we should enforce the "Membership Interest Purchase Agreement" even if we believe the "Settlement Agreement and Release" is unenforceable. We reject that suggestion because enforcement of the "Membership Interest Purchase Agreement" without resolution of the "Settlement Agreement and Release" constitutes the antithesis of a completed settlement to resolve the pending litigation.

-4-