*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

AMERICAN DOOR SYSTEMS, INC.,

        Plaintiff/Counterdefendant-Appellee,

v

JENNIFER FIORE, GASPER FIORE, and JOAN FIORE,

        Defendants/Counterplaintiffs-
        Appellants,

and

JP MORGAN CHASE BANK, NA, formerly known as WASHINGTON MUTUAL BANK,

        Defendant.

UNPUBLISHED
July 20, 2023

No. 362145
Wayne Circuit Court
LC No. 18-000911-CH

Before: GADOLA, P.J., and MURRAY and MALDONADO, JJ.

PER CURIAM.

Defendant-appellants, Jennifer, Gasper, and Joan Fiore (referred to collectively as the Fiores), appeal as of right the trial court's order enforcing the settlement agreement, arguing that plaintiff-appellee American Door Systems, Inc., failed to satisfy its obligations under the agreement. We affirm.

## I. BACKGROUND AND PROCEDURAL HISTORY

This appeal marks the second time that the Fiores have come before us with this dispute, and we previously summarized the pertinent facts as follows:

> The Fiores contracted with American Door to install $136,102 of doors and windows in their home. The Fiores claimed that some of the doors and windows were not properly installed and withheld $43,902 from their payment. The parties filed countercomplaints against each other, but eventually reached a settlement

agreement on the record in open court [on June 5, 2019]. American Door promised to complete a list of specific repairs within four weeks and to provide a one-year warranty on this work. The Fiores placed $20,000 in escrow. Once the work was completed, experts for both parties would walk the property to ensure that the repairs were made satisfactorily. The Fiores would then release the funds. If there were 'any disagreements,' the matter would return to the court 'for a decision on what to do.' The court also expressed its preference that the experts conduct the walk-through together.

American Door completed the repairs [on August 8, 2019,] and informed the court that the parties' attorneys walked through the home to ensure that all repairs were made satisfactorily. The Fiores refused to release the $20,000 from escrow, however, contending that an unnamed expert inspected the repairs and found them wanting as water seeped into the residence. The Fiores asserted that they offered American Door the opportunity to send its own expert to inspect the repairs, but that American Door never responded. The Fiores also denied that their attorney walked the home with counsel for American Door to ensure that the repaired doors and windows were operational.

American Door filed a motion to enforce the settlement agreement and the court conducted a brief hearing. At that hearing, counsel for the Fiores indicated that he was present on the day American Door made the ordered repairs. Counsel 'went around to every single window.' An unidentified person from American Door indicated that there were no issues with any of the windows and doors and stated that counsel for the Fiores promised to walk through with his clients. Counsel for the Fiores, however, asserted that some were sticking and would not open and others were very hard to open. He continued that he provided a letter to American Door's counsel stating 'exactly what was wrong with any spot that we did based on our expert pursuant to the settlement terms that were placed on the record.' This 'expert' was 'a licensed builder' who inspected each window and door.

American Door, on the other hand, claimed that it had an expert inspect its work but that the Fiores refused to have their expert come at the same time. American Door also asserted that the 'windows are sticky, because [the Fiores] will not permit us to put silicon or the EZ glide on them' even though '[i]t's standard.'

The court ordered the Fiores to pay American Door $20,000 . . . . The Fiores' counsel asserted, 'just for record sake,' that 'there's evidentiary disputes, I think we should have an evidentiary hearing.' The court rejected that motion. The parties then entered a stipulated order of dismissal 'as to form only.' [*American Door Sys, Inc v Fiore*, unpublished per curiam opinion of the Court of Appeals, issued November 24, 2020 (Docket No. 350865), p 2.]

The Fiores initially appealed the trial court's denial of their motion to hold an evidentiary hearing on the parties' dispute over compliance with the settlement agreement. The Fiores argued that American Door breached the settlement agreement by failing to retain an expert to inspect the

repairs. On appeal, this Court vacated the trial court's order and remanded to the trial court "for an evidentiary hearing to determine the extent to which each party complied with the settlement agreement," reasoning that the court could not have fairly determined if American Door had met its end of the bargain based on the record then existing. *Id.*; unpub op at 1, 4. This Court held that the parties entered an enforceable settlement agreement in open court and that the clear and unambiguous terms of the agreement provided that each party would hire an expert to examine the repairs. *Id.* at 4. That American Door did not initially hire an expert to inspect the property "left a gap in the record, preventing the circuit court from determining that the parties' dispute under the settlement agreement had been completed." *Id.*

On remand, the trial court ordered the parties to retain an expert to inspect the repairs and prepare written reports and subsequently held an evidentiary hearing to determine whether the settlement agreement terms were satisfied. At the evidentiary hearing, each expert gave competing testimony regarding the condition of the windows and repairs; American Door's expert attested to American Door's great workmanship while the Fiores' expert testified to the shortcomings of the repairs. Daniel Palazzolo, one of American Door's representatives who performed the repairs under the settlement agreement in 2019, also testified at the evidentiary hearing. Daniel testified that on the same day he completed the repairs in August of 2019, he performed a walkthrough with the Fiores' counsel and addressed each repair listed under the settlement agreement. According to Daniel, although the Fiores' counsel verbally agreed that the required repairs were completed, he refused to sign any paperwork evidencing his approval. Following the evidentiary hearing, the trial court ordered the Fiores to deliver the funds held in escrow to American Door, holding that "American Door met its obligations, both as to repair and an expert review and report, under the settlement agreement in a timely, proper[,] and substantive manner."

On appeal, the Fiores argue that the trial court failed to follow this Court's remand instructions—to conduct an evidentiary hearing to determine the parties' compliance with the terms of the settlement agreement—by permitting American Door's expert to undertake an inspection for the first time nearly three years after the parties entered the settlement agreement. The Fiores argue that the settlement agreement required the parties' experts to inspect the repairs within seven days of American Door completing the listed repairs under the agreement. Because American Door failed to retain an expert to conduct an inspection within the time allotted by the agreement, the trial court erred by finding that American Door satisfied its obligations under the agreement.

## II. STANDARD OF REVIEW

A trial court's decision to enforce a settlement agreement is reviewed for an abuse of discretion. *Groulx v Carlson*, 176 Mich App 484, 493; 440 NW2d 644 (1989). An abuse of discretion occurs when the court's ruling is outside the range of reasonable and principled outcomes. *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006). Settlement agreements are governed by the legal principles of contract formation and interpretation, *Walbridge Aldinger Co v Walcon Corp*, 207 Mich App 566, 571; 525 NW2d 489 (1994), and issues related to the existence and interpretation of a contract are questions of law that this Court reviews de novo. *Kloian v Domino's Pizza, LLC*, 273 Mich App 449, 452; 733 NW2d 766 (2006).

## III. ANALYSIS

The Fiores argue that the trial court erred by finding that American Door satisfied its obligations under the settlement agreement when it failed to retain an expert to inspect the repairs within the seven-day grace period.

MCR 2.507(G) provides that "[a]n agreement or consent between the parties or their attorneys respecting the proceedings in an action is not binding unless it was made in open court, or unless evidence of the agreement is in writing, subscribed by the party against whom the agreement is offered or by that party's attorney." "An agreement to settle a pending lawsuit is a contract and is to be governed by the legal principles applicable to the construction and interpretation of contracts." *Walbridge Aldinger Co*, 207 Mich App at 571. In other words, settlement agreements are enforced according to the terms agreed to by the parties and are interpreted according to the plain and ordinary meaning of its terms. *In re Lett Estate*, 314 Mich App 587, 600; 887 NW2d 807 (2016). Settlement agreements are "final and cannot be modified" and "will not be set aside, except for fraud, mutual mistake, or duress." *Clark v Al-Amin*, 309 Mich App 387, 395; 872 NW2d 730 (2015) (quotation marks and citation omitted). "[I]t has long been the law in this state that courts are not to rewrite the express terms of contracts." *McDonald v Farm Bureau Ins Co*, 480 Mich 191, 199-200, 747 NW2d 811 (2008). Nor may Courts read words into the contract that are not apparent from its plain terms. *Northline Excavating, Inc v Livingston Co*, 302 Mich App 621, 628; 839 NW2d 693 (2013).

It is undisputed that the parties entered into a binding settlement agreement at the June 5, 2019, hearing, pursuant to MCR 2.507(G). However, contrary to the Fiores' assertions, there was nothing in the plain terms of the agreement limiting the inspection period to within seven days of American Door completing the repairs. *Northline Excavating, Inc*, 302 Mich App at 628 (holding that a court "cannot read words into the plain language of a contract"). According to the agreement, the parties agreed to hire an expert to examine the repaired doors and windows, and in the event that the parties' experts disagreed about the sufficiency of the repairs, the parties agreed to notify the trial court and the trial court would render a decision regarding whether the terms of the settlement agreement were met. That the parties' experts were to perform a joint inspection was a mere preference shared by the trial court at the settlement hearing. While the parties agreed to certain temporal limitations on the performance of other obligations under the agreement,[1] no such limitation was ever articulated by the parties with respect to the inspection. Thus, the trial court did not err by declining to read into the agreement a temporal restraint on the inspection period that the parties never contemplated when entering into the agreement.

For these same reasons, we reject the Fiores' argument that American Door conceded that the parties agreed to a seven-day inspection window under the settlement agreement. The Fiores direct us to an email exchange between the parties' counsels indicating that on August 14, 2019, the Fiores' counsel requested that the parties schedule an inspection of the repairs, and in response, on August 20, 2019, American Door's counsel rejected the request as untimely, stating that if the parties wanted to retain an expert to review any work, then that inspection needed to occur within

---

[1] The settlement agreement provided that the Fiores were to put $20,000 in an escrow account within seven days of the hearing, and American Door was to complete the repairs within four weeks after receiving notice that the funds were in the escrow account.

seven days after American Door completed the repairs on August 8, 2019. The record shows that when the parties reached a settlement agreement on June 5, 2019, the essential terms of that agreement were placed on the record in open court, and neither party expressed any intention of placing a temporal restraint on the inspection. American Door's unilateral declaration postdating the parties' agreement did not permit the court to alter or add terms not otherwise expressed in the agreement's plain language. *Kloian*, 273 Mich App at 460 n 4 ("A unilateral declaration in a letter does not alter the binding terms of the original contract."); *Northline Excavating, Inc*, 302 Mich App at 628 ("We cannot read words into the plain language of a contract.").

The Fiores further argue that the trial court erred by permitting American Door's expert to perform an inspection for the first time years after the repairs were completed because even if the agreement was silent as to the time for performance, a "reasonable time" should be read into the agreement, citing *Soloman v Western Hills Dev Co*, 88 Mich App 254, 257; 276 NW2d 577 (1979) ("Where the time of performance is indefinite, performance may be required to be rendered within a reasonable time."). Even if we were to agree with the Fiores' assertions, we would nevertheless conclude that American Door's purported breach of failing to comply with the inspection period was immaterial and did not affect a substantial or essential part of the agreement so as to excuse the Fiores' performance, *Holtzlander v Brownell*, 182 Mich App 716, 721; 453 NW2d 295 (1990) (holding that a material breach of a contract is one that affects "a substantial or essential part of the contract"). "One consideration in determining whether a breach is material is whether the nonbreaching party obtained the benefit which he or she reasonably expected to receive." *Id*. at 722. The crux of the parties' settlement agreement rested on American Door's promise to complete certain repairs in exchange for compensation. As noted above, timely performance of the inspection was not made an essential term of the settlement agreement, nor was the benefit of the bargain contingent on the inspection. The Fiores, irrespective of whether the inspection occurred, obtained the benefit they expected to receive from the agreement, that is, repaired windows and doors. And, the merely technical breach asserted by the Fiores does not permit them to relinquish their obligations under the agreement. *Abbate v Shelden Land Co*, 303 Mich 657, 666; 7 NW2d 97 (1942) ("It is not every partial failure to comply with the terms of a contract by one party which will entitle the other party to abandon the contract at once.") (quotation marks and citation omitted).

Significantly, even if we were to conclude that the parties agreed to the seven-day inspection window or that a "reasonable time" for performance was read into the settlement agreement, the record shows that American Door nevertheless complied. In the same email raised by the Fiores to suggest that the parties agreed to a seven-day inspection window, American Door's counsel also stated that American Door's representative had already performed a walkthrough with the Fiores' counsel after completing the repairs on August 8, 2019, and that the Fiores' counsel was present during the inspection and verbally approved each item. The owner and representative of American Door, John Palazzolo,[2] testified at the hearing on American Door's motion to enforce the settlement agreement, stating that on August 8, 2019, he inspected each repair alongside the

---

[2] Although the hearing transcript indicates that this testimony was provided by an "unidentified speaker," American Door later identified the speaker as John Palazzolo in their response to the Fiores' motion to enforce the settlement agreement.

Fiores' counsel, opining that there were no issues with the work, and further alleged that the Fiores' counsel verbally approved the repairs but indicated that he would separately conduct a walkthrough with the Fiores. At that motion hearing, the Fiores' counsel admitted that he was present that day and "went around to every single window," but denied providing any verbal confirmation that the repairs were satisfactory. Moreover, Daniel Palazzolo corroborated John's testimony as to American Door's inspection of the repairs when testifying that after repairing all of the listed items under the settlement agreement, he inspected the repairs, "walk[ing] item by item with [the Fiores' counsel]." Daniel testified that although the Fiores' counsel agreed that the required repairs were satisfactory, he refused to sign any paperwork evidencing his approval. Thus, the trial court did not abuse its discretion by enforcing the settlement agreement, nor did it err by finding that American Door satisfied its obligations under the agreement.

Affirmed.

/s/ Michael F. Gadola
/s/ Christopher M. Murray
/s/ Allie Greenleaf Maldonado