*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

AGUAFINA GARDENS & IMPORTS INC.,
doing business as AGUAFINA GARDENS
INTERNATIONAL,

UNPUBLISHED
September 09, 2025
12:22 PM

Plaintiff-Appellee,

v

No. 372553
Oakland Circuit Court
LC No. 2022-197501-CH

ELANAH HUNGER,

Defendant-Appellant,

and

RICHARD HUNGER,

Defendant.

Before: GADOLA, C.J., and MARIANI and TREBILCOCK, JJ.

PER CURIAM.

Defendant, Elanah Hunger,[1] appeals as of right[2] the trial court's order enforcing a settlement agreement, which purported to resolve plaintiff's claims against defendant for unpaid

---

[1] We refer to Elanah Hunger singularly as defendant because defendant Richard Hunger was not a party to the trial court's settlement order, nor is he a party on appeal.

[2] We dismissed defendant's earlier appeal for lack of jurisdiction, "because there [was] no final judgment or order . . . ." *Aguafina Gardens & Imports Inc v Hunger*, unpublished order of the Court of Appeals, entered October 1, 2024 (Docket No. 372347). The trial court subsequently entered an order closing this matter, stating the case should have been closed when the trial court entered its order enforcing the settlement agreement.

-1-

amounts under a contract for landscaping services. Because plaintiff unilaterally modified the settlement agreement without defendant's acceptance, we reverse and remand.

Plaintiff provided landscaping services for defendant and reconstructed defendant's driveway. Plaintiff's owner claimed defendant owed plaintiff nearly $312,000 for the work. Defendant asserted the amount was inaccurate, because plaintiff overcharged her for labor costs, and charged her for work it did not perform. Plaintiff filed a complaint, bringing counts of: (1) accounts stated, (2) breach of contract, and (3) unjust enrichment. Defendant filed a counterclaim for breach of contract.

At a hearing on May 28, 2024, plaintiff's counsel stated the parties reached a settlement. Plaintiff's counsel agreed to draft a settlement agreement, stating: "There'll be full releases by all sides, non-disparagement, non-disclosures, confidentiality, and we'll do that within the next week." The trial court indicated it would "approve the terms of the settlement." The same day, plaintiff's counsel sent defense counsel a draft settlement agreement. Defendant would agree to pay $165,000 to plaintiff, and $20,000 to plaintiff's foreman. The draft agreement included the following non-disparagement clause:

> 5. **Non-Disparagement**. For an indefinite period of time beginning on the Effective Date, the Parties shall not directly or indirectly make or publish or cause to be made or published, any statement, observation, image or opinion, or otherwise communicate any information (whether in written or oral form), in speeches, conversations, writings, social media, electronic or recorded communications, postings or otherwise, that (i) defames, disparages or slanders the other or any of their businesses, products, services or real estate; (ii) could harm the reputation of any of the other; (iii) casts the other in a negative light; (iv) interferes with or obstructs any business relationships of the other; or (v) in any way criticizes the personal or business reputation, practices or conduct of the other. The Parties acknowledge and agree that the foregoing covenant extends to statements, written or oral, electronic, or recorded, or otherwise, made to anyone, including, but not limited to, the news media, via social media, members of the public or private friends, relatives, clients or acquaintances.

On June 13, 2024, defense counsel sent plaintiff's counsel revisions to the draft agreement. Defense counsel did not revise the non-disparagement clause, but commented the provision barring defendant from "interfer[ing] with or obstruct[ing] any business relationships" was "super broad[.]" According to plaintiff, the parties' counsel met the next day, after which plaintiff's counsel circulated another revision of the draft settlement, incorporating some of defense counsel's changes. The non-disparagement clause remained the same as in the May 28, 2024 draft. Plaintiff's owner signed the June 14, 2024 draft, but defendant did not sign.

Plaintiff moved to enforce the June 14, 2024 draft agreement. In defense counsel's response, he did not object to any language in that draft agreement. Defense counsel stated defendant's delay in signing was attributable to defense counsel because he did not send defendant the new draft agreement until defendant was on vacation, and the delay "is in no way an indication that [defendant] intends to now oppose the terms of the Settlement Agreement placed on the record." However, defense counsel circulated another revision of the draft settlement on July 9,

2024. This revision significantly limited the scope of the original non-disparagement clause. Defendant signed the July 9, 2024 draft, but plaintiff's owner did not sign.

On July 10, 2024, the trial court held a hearing on plaintiff's motion to enforce the settlement agreement. The trial court stated: "I don't know the complete agreement between you. But as a rule, if a settlement is put on the record, an agreement is made, and neither side can agree on the language, usually they are stuck with the language that is there." Defense counsel responded: "But there's more in the agreement than that's on the record. I'll live with the transcript as the agreement." Plaintiff's counsel asserted the changes in the June 14, 2024 draft agreement "were done and finalized, [and] signed by my client . . . . And they were to be signed by your client . . . , and she didn't do it. Even though she could have." Defense counsel stated that defendant wanted to change the non-disparagement clause because "[Plaintiff's counsel] had proposed a very broad one. We wanted simpler language." Plaintiff's counsel asserted defense counsel agreed to the broad non-disparagement clause when the agreement was drafted. The trial court then stated that it would enforce and enter the original settlement agreement. Defendant moved for reconsideration of the trial court's ruling. The trial court denied reconsideration, and ordered defendant to execute the June 14, 2024 settlement agreement. Defendant now appeals, arguing the trial court erroneously ordered her to execute the June 14, 2024 settlement agreement because she did not accept the broad non-disparagement clause in the agreement. We agree.

Plaintiff contends defendant waived the issue on appeal by failing to object to plaintiff's proposed non-disparagement clause until her motion for reconsideration. A party need only raise an issue in the trial court to preserve the issue for appeal. *Glasker-Davis v Auvenshine*, 333 Mich App 222, 227; 964 NW2d 809 (2020). But an issue is unpreserved if the party asserting error first presented the issue in a motion for reconsideration. *Vushaj v Farm Bureau Gen Ins Co of Mich*, 284 Mich App 513, 519; 773 NW2d 758 (2009). Plaintiff's argument lacks merit because defendant objected to the non-disparagement clause at the July 10, 2024 hearing, before she moved for reconsideration. Defense counsel objected to plaintiff's draft agreement because it contained "more . . . than that's on the record." Specifically, defense counsel "wanted to simplify the non-disparagement[]" clause, which was "very broad . . . ." These statements, though not detailed, were sufficient to preserve the issue. "[S]o long as the issue itself is not novel, a party is generally free to make a more sophisticated or fully developed argument on appeal than was made in the trial court." *Glasker-Davis*, 333 Mich App at 228. The motion hearing transcript indicates defendant raised the issue whether the non-disparagement clause in plaintiff's draft agreement was broader than what the parties agreed to in open court. Therefore, the issue is preserved.

This Court reviews a trial court's decision to enforce a settlement agreement for an abuse of discretion. *In re Raymond T Conley Trust*, ___ Mich App ___; ___ NW3d ___ (2024) (Docket No. 366180); slip op at 3. "An abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes[,]" or when the trial court makes an error of law. *Powers v Brown*, 328 Mich App 617, 620; 939 NW2d 733 (2019) (quotation marks and citations omitted). The interpretation of a contract is a question of law, which this Court reviews de novo. *Kloian v Domino's Pizza, LLC*, 273 Mich App 449, 452; 733 NW2d 766 (2006). "An agreement to settle a pending lawsuit is a contract and is to be governed by the legal principles applicable to the construction and interpretation of contracts." *Id*. (quotation marks and citation omitted).

The trial court abused its discretion by enforcing the June 14, 2024 draft settlement because defendant never agreed to plaintiff's proposed non-disparagement clause. As a type of contract, a settlement agreement requires an offer and an "unambiguous" acceptance "in strict conformance with the offer . . . ." *Dabish v Gayar*, 343 Mich App 285, 289-290; 997 NW2d 463 (2022) (quotation marks and citations omitted). There must be "a meeting of the minds on all the essential terms." *Id*. (quotation marks and citation omitted). A party accepts a contractual offer when they "manifest[] an intent to be bound by the offer, . . . through voluntarily undertaking some unequivocal act sufficient for that purpose." *Kloian*, 273 Mich App at 453-454 (quotation marks and citation omitted). For settlement agreements specifically, MCR 2.507(G) sets an additional barrier to enforceability. A settlement agreement "is not binding unless it was made in open court, or unless evidence of the agreement is in writing, subscribed by the party against whom the agreement is offered or by that party's attorney." MCR 2.507(G). "A court cannot force settlements upon parties or enter an order pursuant to the consent of the parties which deviates in any material respect from the agreement of the parties." *Kloian*, 273 Mich App at 461 (quotation marks and citations omitted).

The parties do not dispute they agreed to settle plaintiff's lawsuit at the May 28, 2024 hearing. Defendant agreed to pay plaintiff and plaintiff's foreman within seven days of the agreement's execution. Plaintiff's counsel agreed to draft a written settlement, which would include a "non-disparagement" provision. Neither party detailed what the provision would include. Defendant argues the trial court erred in enforcing plaintiff's June 14, 2024 draft, because she never accepted the proposed non-disparagement clause in that draft. Plaintiff contends its draft completely matches the parties' agreement at the May 28, 2024 hearing. In plaintiff's view, defendant accepted the non-disparagement clause plaintiff drafted by agreeing to a non-disparagement provision in open court. We disagree.

This Court interprets contracts according to their "plain and ordinary meaning[,]" and plaintiff's argument contradicts the ordinary meaning of the parties' agreement in open court. *Klein v HP Pelzer Auto Sys, Inc*, 306 Mich App 67, 75; 854 NW2d 521 (2014) (quotation marks and citations omitted). The non-disparagement clause prohibited defendant from "directly or indirectly mak[ing] or publish[ing]" any statement that "defames, disparages, or slanders" plaintiff or its services, "casts [plaintiff] in a negative light[,]" interferes with plaintiff's business relationships, or criticizes or harms plaintiff's reputation. The dictionary definition of "disparage" is "to belittle the importance or value of" or "to lower in rank or reputation[.]" Merriam-Webster Dictionary, *Definition of disparage* <https://www.merriam-webster.com/dictionary/disparage> (accessed August 19, 2025). The ordinary meaning of a non-disparagement provision, on its own, would not bar defendant from direct or indirect statements, which would "interfere[] with" plaintiff's business relationships, or "in any way criticize[]" plaintiff. The parties' agreement to some form of non-disparagement clause in open court does not show defendant accepted the draft agreement the trial court enforced.

Because a broad non-disparagement clause was not part of the parties' agreement in open court, the clause must have been a valid modification of that agreement to be enforceable. The parties to a contract can agree to modify it by mutual consent. *Kloian*, 273 Mich App at 454. A modification can be established through clear and convincing evidence of the parties' affirmative conduct establishing mutual agreement, or a written or oral agreement. *Id*. at 455.

In this matter, there is no evidence defendant consented to modify the parties' agreement by adding a broad non-disparagement clause. A written settlement agreement must be "subscribed[,]" i.e., signed, "by the party against whom the agreement is offered or by that party's attorney." MCR 2.507(G); *Kloian*, 273 Mich App at 460 (citation and emphasis omitted) ("Subscription requires a signature at the bottom."). In *Dabish*, 343 Mich App at 288-290, the trial court erred by enforcing a purported settlement agreement that the plaintiff did not sign. Here, defendant did not sign either of the drafts in the record containing the non-disparagement clause. Thus, the trial court erred in ordering defendant to sign the settlement agreement.

In the trial court and on appeal, plaintiff alternatively claims defense counsel approved the June 14, 2024 draft agreement. This assertion is speculative. Although an attorney has apparent authority to settle a lawsuit on their client's behalf, *Kloian*, 273 Mich App at 453, the parties' communications do not show defense counsel approved plaintiff's draft on defendant's behalf. Defense counsel revised plaintiff's initial draft and added a comment indicating that he believed the non-disparagement clause was "super broad" and posed a question as to what would qualify as disparagement under the agreement. Defense counsel also told plaintiff's counsel the revisions were subject to client approval. Neither defendant, nor defense counsel, ever approved the subsequent draft that the trial court enforced. The record shows neither defendant nor her counsel agreed to plaintiff's unilateral modification of the agreement.

"A court cannot force settlements upon parties or enter an order pursuant to the consent of the parties which deviates in any material respect from the agreement of the parties." *Kloian*, 273 Mich App at 461 (quotation marks and citations omitted). By forcing defendant to execute a settlement containing a non-disparagement clause she did not agree to, the trial court abused its discretion. We reverse and remand for further proceedings. We do not retain jurisdiction.

/s/ Michael F. Gadola
/s/ Philip P. Mariani
/s/ Christopher M. Trebilcock