*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

NATHAN LATESKY,

Plaintiff-Appellee,

v

DESARI SCHIEFER,

Defendant-Appellant.

UNPUBLISHED
August 20, 2025
3:12 PM

No. 373006
Saginaw Circuit Court
Family Division
LC No. 2011-014167-DC

Before: REDFORD, P.J., and RIORDAN and BAZZI, JJ.

PER CURIAM.

In this child-custody dispute, defendant appeals as of right the trial court's opinion and order regarding the legal custody, domicile, and parenting time of the parties' two minor children, MDL (16 years old), and BSL (9 years old). We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The parties in this case were never married. The parties had an intermittent relationship, which necessitated the establishment of a parenting-time schedule for their two minor children. According to the Friend of the Court (FOC), the parties demonstrated genuine concern for their children's well-being, although each had voiced criticisms of the other. In July 2017, the trial court entered an order granting the parties joint legal and physical custody of the minor children, with equal parenting time consisting of alternating full weeks. The court further ordered that neither party may move more than 100 miles away or out of Michigan.

In December 2023, defendant moved to change custody, parenting time, domicile, and the children's schools. Defendant specifically sought sole physical custody of the minor children, authorization to relocate them to Ohio, where they would subsequently be enrolled in school, and a modification of plaintiff's parenting time accordingly. Since the entry of the 2017 order, plaintiff had entered into a relationship with a new girlfriend. The minor children reported feeling that the plaintiff prioritized his new girlfriend and her children, to the detriment of his own relationship with them. MDL and BSL expressed feelings of being neglected and stated that they felt bullied or dismissed by the new girlfriend and her children. Plaintiff, by his own admission, engaged in verbal abuse toward MDL, which ultimately led MDL to refuse further parenting time with him.

-1-

Plaintiff moved to hold defendant in contempt because the alternating parenting-time order was disrupted, and he requested additional parenting time to compensate for prior missed parenting time with the children. In April 2024, the trial court set the motion aside pending an evidentiary hearing, and it entered a temporary order granting plaintiff four hours of parenting time per week with MDL and requiring him to attend counseling with MDL.

In the interim, defendant formed a relationship with a man in Ohio, became engaged after a short period, and desired to relocate to his larger residence in Ohio. Additionally, defendant alleged that she secured a better and less stressful employment opportunity in Ohio. It was also reported that, during this period, BSL lost interest in sporting activities in which he had previously participated enthusiastically. Plaintiff contended that BSL's diminished engagement resulted from defendant's potential relocation to Ohio.

The trial court held an evidentiary hearing, and it determined that MDL maintained an established custodial environment with defendant, while BSL maintained an established custodial environment with both parents. The court opined, accordingly, that defendant bore the burden of establishing by clear and convincing evidence that a change in custody was in the children's best interests. The trial court found that the potential benefits to the children from relocating to Ohio were speculative, even if the move may improve defendant's circumstances, and the impact of the relocation on the children's relationship with plaintiff was unpredictable.

The court further ruled that several best-interest factors weighed in defendant's favor regarding MDL; however, concerning BSL, the trial court concluded that most of the factors either favored both parties equally or weighed in favor of plaintiff. Thus, the trial court determined that defendant failed to the meet the burden of proving by clear and convincing evidence that a change in custody was warranted. The court denied plaintiff's motion to hold defendant in contempt, it did not order resumption of the full alternating-weekly parenting time schedule for MDL, and it did not award plaintiff makeup parenting time. Instead, the trial court ordered maintenance of the status quo as set by its temporary order, but with the addition of three more hours of parenting time for plaintiff every other week outside of the presence of plaintiff's girlfriend. On October 10, 2024, the trial court entered an opinion and order detailing its factual findings and legal analysis. This appeal ensued.

## II. STANDARDS OF REVIEW AND LEGAL PRINCIPLES

"In matters involving child custody, all orders and judgments of the circuit court shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue." *Brown v Brown*, 332 Mich App 1, 8; 955 NW2d 515 (2020) (quotation marks and citations omitted). This Court has explained:

> This Court will not interfere with the trial court's factual findings unless the facts clearly preponderate in the opposite direction. Discretionary rulings, including a trial court's decision to change custody, are reviewed for an abuse of discretion. In child custody cases specifically, an abuse of discretion retains the historic standard under which the trial court's decision must be palpably and grossly violative of fact and logic. Clear legal error occurs when the trial court incorrectly chooses,

interprets, or applies the law. This Court reviews the trial court's determination regarding a child's best interests for clear error. This Court gives deference to the trial court's factual judgments and special deference to the trial court's credibility assessments. [*Id*. at 8-9 (quotation marks and citations omitted).]

"Similarly, [o]rders concerning parenting time must be affirmed on appeal unless the trial court's findings were against the great weight of the evidence, the court committed a palpable abuse of discretion, or the court made a clear legal error on a major issue." *Stoudemire v Thomas*, 344 Mich App 34, 42-43; 999 NW2d 43 (2022) (alteration in original; quotation marks and citation omitted).

Further, in *Barretta v Zhitkov*, 348 Mich App 539; 19 NW3d 420 (2023), this Court detailed:

The Child Custody Act (CCA), MCL 722.21 *et seq*., governs custody, parenting time, and child support issues for minor children in Michigan, and it is the exclusive means of pursuing child custody rights. The CCA is equitable in nature and must be liberally construed and applied to establish promptly the rights of the child and the rights and duties of the parties involved. The CCA promotes the best interests of the child by ensuring a stable environment free of unnecessary and disruptive custodial modifications. Indeed, constant changes in a child's physical custody can wreak havoc on the child's stability, as can other orders that may significantly affect the child's best interests. To that end, the CCA limits a court's power to modify previous judgments or orders regarding custody and parenting time. [*Id*. at 550-551 (quotation marks and citations omitted).]

### III. ESTABLISHED CUSTODIAL ENVIRONMENT

Defendant argues that, because an established custodial environment existed with her alone, the trial court erred in finding that BSL had an established custodial environment with both parents. We disagree.

"When resolving important decisions that affect the welfare of the child, the court must first consider whether the proposed change would modify the established custodial environment." *Stoudemire*, 344 Mich App at 43 (quotation marks and citation omitted). "The custodial environment of a child is established if over an appreciable time the child naturally looks to the custodian in that environment for guidance, discipline, the necessities of life, and parental comfort." *Id*., quoting MCL 722.27(1)(c).

Whether an established custodial environment exists is critical. If an established custodial environment exists and the proposed change would alter that custodial environment, the moving party "must demonstrate by clear and convincing evidence that the change is in the child's best interests." However, if no custodial environment exists, a prior custody order may be altered merely on the basis of a preponderance of the evidence that doing so would be in the child's best interests. [*Stoudemire*, 344 Mich App at 48 (citations omitted).]

A trial court may not change a child's established custodial environment, as considered from the child's perspective, "except in the most compelling cases." *Sabatine v Sabatine*, 513 Mich 276, 285-286; 15 NW3d 204 (2024). An established custodial environment is contingent

> upon a custodial relationship of a significant duration in which [the child is] provided the parental care, discipline, love, guidance and attention appropriate to his age and individual needs; an environment in both the physical and psychological sense in which the relationship between the custodian and the child is marked by qualities of security, stability and permanence. [*Id*. at 286 (quotation marks and citation omitted).]

"[W]hether a custodial environment has been established is an intense factual inquiry." *Foskett v Foskett*, 247 Mich App 1, 6; 634 NW2d 363 (2001).

We disagree with defendant's claim that the trial court's factual findings regarding BSL's established custodial environment were against the great weight of the evidence. The record reflects that plaintiff was involved in BSL's life and devoted considerable attention to the minor child. While there was evidence that plaintiff's relationship with BSL was impaired because of plaintiff's girlfriend and her children, plaintiff acknowledged his need to strengthen his bond with BSL and took steps to do so by spending increased time with him, including taking BSL to work every other Friday, going swimming, and engaging in shooting activities together. Moreover, although BSL's therapist testified that the child expressed a dislike for plaintiff's girlfriend and her children, there was no indication that BSL did not wish to reside with plaintiff. Additionally, as noted by the trial court, the parties "have been exercising an equal parenting time schedule with the minor child, [BSL], for nearly seven years and have both been involved in his daily care, extracurricular activities, medical care, and schooling."

Despite some strain in the relationship, the record does not demonstrate that BSL has ceased to rely on plaintiff for love, guidance, security, and daily necessities. Furthermore, the trial court interviewed both children, and the parties permitted the court to explore issues beyond the children's custody preferences. See *Sabatine*, 513 Mich at 285 (stating, "Trial courts not only hear testimony and observe witnesses, but also may elicit testimony, interview children, and invoke other judicial resources to assure a thorough and careful evaluation of the child's best interests") (quotation marks and citation omitted). The trial court's finding that BSL had an established custodial environment with both parents was not contrary to the great weight of the evidence.

## IV. BEST-INTEREST DETERMINATION

Defendant argues that several of the trial court's best-interest findings were either premised on clear legal error or against the great weight of the evidence. We disagree.

"To determine a child's best interests, the trial court is required to consider the 12 best-interest factors found in MCL 722.23 and to apply the appropriate standard of proof." *Kuebler v Kuebler*, 346 Mich App 633, 671; 13 NW3d 339 (2023). Pursuant to MCL 722.23, these factors are:

> (a) The love, affection, and other emotional ties existing between the parties involved and the child.

(b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any.

(c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs.

(d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.

(e) The permanence, as a family unit, of the existing or proposed custodial home or homes.

(f) The moral fitness of the parties involved.

(g) The mental and physical health of the parties involved.

(h) The home, school, and community record of the child.

(*i*) The reasonable preference of the child, if the court considers the child to be of sufficient age to express preference.

(j) The willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents. A court may not consider negatively for the purposes of this factor any reasonable action taken by a parent to protect a child or that parent from sexual assault or domestic violence by the child's other parent.

(k) Domestic violence, regardless of whether the violence was directed against or witnessed by the child.

(*l*) Any other factor considered by the court to be relevant to a particular child custody dispute.

"A trial court must consider and explicitly state its findings and conclusions with respect to each of these factors." *Kuebler*, 346 Mich App at 671 (quotation marks and citation omitted). But while the trial court must develop an adequate record "for this Court to determine whether the evidence clearly preponderates against the trial court's findings," it does not need to comment on "every piece of evidence entered and argument raised by the parties." *Safdar v Aziz*, 342 Mich App 165, 185-186; 992 NW2d 913 (2022) (quotation marks and citation omitted). "The trial court need not necessarily engage in elaborate or ornate discussion because brief, definite, and pertinent findings and conclusions regarding the contested matters are sufficient." *Foskett*, 247 Mich App at 12.

Defendant first contends that the trial court failed to consider the distinct interests of each minor child under Factors (c), (d), (e), (f), (*i*), (j), and (*l*). But the record plainly provides otherwise. For Factor (c), the "[t]he capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care," MCL 722.23(c), the court differentiated between each party's contributions to these areas as they pertained individually to MDL and BSL. The court further distinguished between the parties' respective contributions to scheduling and ensuring attendance at each child's medical appointments.

For Factor (d), "[t]he length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity," MCL 722.23(d), the trial court reviewed each party's present living arrangements, relationship status, and history of relocations, along with the extent to which the minor children were comfortable with those conditions. For Factor (e), "[t]he permanence, as a family unit, of the existing or proposed custodial home or homes," MCL 722.23(e), the court evaluated the parties' and the minor children's relationships with their extended families, and the effect of the parties' separate romantic relationships on the children.

For Factor (f), "[t]he moral fitness of the parties involved," MCL 722.23(f), the trial court focused exclusively on defendant's conduct toward MDL noting, "Defendant-Mother's decision to involve a child in adult activities is offensive behavior lacking moral fitness. This behavior insinuates more of a friend relationship than parent/child relationship and impacts Defendant-Mother's ability to appropriately parent the child." The court further addressed an unsubstantiated complaint against plaintiff, "regarding one sibling locking the other two siblings in a dog enclosure in the backyard at Plaintiff-Father's home." For Factor (*i*), "[t]he reasonable preference of the child, if the court considers the child to be of sufficient age to express preference," MCL 722.23(*i*), the trial court shared that the minor children were interviewed separately, and their respective preferences were appropriately weighed.

For Factor (j), "[t]he willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents," MCL 722.23(j), the court analyzed the parties' efforts to promote and maintain the other parent's relationship with each child, with particular emphasis on the strained dynamic between plaintiff and MDL. For Factor (*l*), "[a]ny other factor considered by the court to be relevant to a particular child custody dispute," MCL 722.23(*l*), the trial court plainly differentiated between the two children stating:

> Given the Court's determination that there is an established custodial environment with both parties for [BSL], and an established custodial environment with Defendant-Mother for [MDL], there must be clear and convincing evidence lo modify the established custodial environments. Plaintiff-Father was favored on Factors E, F, and J. Defendant-Mother was favored on Factor[s] A, B, and H for [MDL] only, and the parties were equal on all other factors. The Court's findings under the factors do not support clear and convincing evidence that a modification of the established custodial environment is in the best interest of either child.

The trial court's factual findings and legal conclusions concerning the contested factors were by no means lacking, and the court developed a sufficiently clear record from which this Court could determine whether the evidence clearly preponderated against its findings as to both children. *Rittershaus v Rittershaus*, 273 Mich App 462, 475; 730 NW2d 262 (2007). Furthermore, while trial courts have "the duty to apply all the statutory best interests factors to each individual child," *Foskett*, 247 Mich App at 11, this Court has determined, although in the termination-of-parental-rights context, trial courts are only required to do so when "the best interests of the individual children *significantly* differ," *In re White*, 303 Mich App 701, 715; 846 NW2d 61 (2014). Additionally, the trial court is not required to give equal weight to all of the best-interest factors. *Sinicropi v Mazurek*, 273 Mich App 149, 184; 729 NW2d 256 (2006). In sum, defendant has not demonstrated that the individual children's best interests warranted further examination.

Defendant further argues that the trial court's findings under best-interest factors (a), (b), and (h) with respect to BSL were against the great weight of the evidence. We disagree.

Factor (a) addresses, "The love, affection, and other emotional ties existing between the parties involved and the child." MCL 722.23(a). Factor (b) pertains to "[t]he capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any." MCL 722.23(b). Defendant contends that the trial court erred in determining that Factors (a) and (b) equally favored both parties regarding BSL. Defendant essentially reiterates her arguments regarding BSL's established custodial environment, which lack merit in light of the evidence that plaintiff maintained a substantial emotional connection with BSL and exhibited the same capacity for affection as defendant. Thus, the trial court's findings concerning these factors were not against the great weight of the evidence.

Factor (h) examines, "The home, school, and community record of the child." MCL 722.23(h). Defendant argues that the trial court improperly resolved that Factor (h) equally favored both parties concerning BSL, and the court solely considered plaintiff's involvement in BSL's extracurricular activities. However, defendant's own testimony reflects an inconsistency: she claimed both that she refused to sign BSL up for a sport because he did not wish to participate, and that defendant nevertheless forced the minor child to attend a game even though he felt ill. Further, defendant stated that she would beg or bribe BSL to participate. Notably, the children's school attendance declined markedly under defendant's care, especially in contrast to their time with plaintiff. Accordingly, the trial court's findings regarding this factor were not against the great weight of the evidence.[1]

---

[1] While the trial court erred in its findings on certain best-interest factors regarding MDL, defendant does not substantially challenge those erroneous findings regarding Factors (c) and (d), with respect to MDL on appeal. See *Brown*, 332 Mich App at 25-26 (providing that a trial court's erroneous finding under a single best-interest factor may be harmless if the remaining factors support the trial court's ultimate custody decision); see also *Maier v Maier*, 311 Mich App 218, 227; 874 NW2d 725 (2015) (stating, "In order for plaintiff to show that she should have been awarded custody, it is not only necessary for her to show that the trial court erred in its

V.  CHANGE OF DOMICILE

Defendant argues that some, but not all, of the trial court's findings under the change-of-domicile factors were against the great weight of the evidence and did not support its decision to deny defendant's motion to change domicile.  We disagree.

"This Court reviews a trial court's decision regarding a motion for change of domicile for an abuse of discretion and a trial court's findings regarding the factors set forth in MCL 722.31(4) under the 'great weight of the evidence' standard."  *Rains v Rains*, 301 Mich App 313, 324; 836 NW2d 709 (2013).  MCL 722.31(1), of the CCA, provides in relevant part:

> Except as otherwise provided in this section, a parent of a child whose custody is governed by court order shall not change a legal residence of the child to a location that is more than 100 miles from the child's legal residence at the time of the commencement of the action in which the order is issued.

This Court previously delineated the four steps that a trial court must undertake in determining whether to grant or deny a motion to change domicile:

> First, a trial court must determine whether the moving party has established by a preponderance of the evidence that the factors enumerated in MCL 722.31 . . . support a motion for a change of domicile.  Second, if the factors support a change in domicile, then the trial court must then determine whether an established custodial environment exists.  Third, if an established custodial environment exists, the trial court must then determine whether the change of domicile would modify or alter that established custodial environment.  Finally, if, and only if, the trial court finds that a change of domicile would modify or alter the child's established custodial environment must the trial court determine whether the change in domicile would be in the child's best interests by considering whether the best-interest factors in MCL 722.23 have been established by clear and convincing evidence.  [*Rains*, 301 Mich App at 325.]

MCL 722.31(4) details the five factors that the trial court must consider:

(a) Whether the legal residence change has the capacity to improve the quality of life for both the child and the relocating parent.

(b) The degree to which each parent has complied with, and utilized his or her time under, a court order governing parenting time with the child, and whether the

---

consideration of some of the factors that favored defendant, but also that some of the factors favored her").  Regardless, because defendant expressed that she did not desire to separate the minor children, modifying custody or changing domicile would remain improper, as the trial court's findings regarding BSL were appropriate.

parent's plan to change the child's legal residence is inspired by that parent's desire to defeat or frustrate the parenting time schedule.

(c) The degree to which the court is satisfied that, if the court permits the legal residence change, it is possible to order a modification of the parenting time schedule and other arrangements governing the child's schedule in a manner that can provide an adequate basis for preserving and fostering the parental relationship between the child and each parent; and whether each parent is likely to comply with the modification.

(d) The extent to which the parent opposing the legal residence change is motivated by a desire to secure a financial advantage with respect to a support obligation.

(e) Domestic violence, regardless of whether the violence was directed against or witnessed by the child.

The burden is on the party seeking the change in domicile to show by a preponderance of the evidence that the change in domicile is warranted. *Rains*, 301 Mich App at 326-327. In evaluating this matter, "the child [must be] the primary focus in the court's deliberations . . . ." MCL 722.31(4).

In the instant case, the trial court determined that defendant failed to establish by a preponderance of the evidence that the cited factors supported the change of domicile. Defendant solely challenges the trial court's findings under factors (a) and (c) because the court determined that the remaining change-of-domicile factors were inapplicable or favored defendant.

For factor (a), while defendant presented evidence of how her own quality of life may be enhanced by her relocation to Ohio, defendant presented minimal evidence demonstrating how the minor children's quality of life would be definitively improved by the proposed change. See *Yachcik v Yachcik*, 319 Mich App 24, 36; 900 NW2d 113 (2017) (opining that the trial court properly determined, "given its finding that it was not clear whether the child's quality of life would be improved by the move, that plaintiff had failed to demonstrate by a preponderance of the evidence that the MCL 722.31(4) factors supported a change of legal residence"). Moreover, the trial court considered that any potential benefit arising from defendant's move to Ohio was speculative, because it would be offset by the introduction of defendant's fiancé into the household, the need for the children to adjust to a new school, and their removal from an established environment. Additionally, although there was testimony indicating that the children had met and expressed liking defendant's fiancée, occasional visits differ substantially from cohabitation. Notably, defendant became engaged to her fiancée merely three months after meeting him online. Further, while defendant was optimistic regarding her employment prospects in Ohio, she had yet to visit the facility where she intended to work. Additionally, as noted by the trial court, "[T]here would be a significant distance from Plaintiff-Father, who has been a large part of their day-to-day lives since the party's separation." The minor children were additionally bonded with their current therapists, and there may be difficulties obtaining alternate care. While the court erroneously stated that defendant's new residence in Ohio was only 1,433 square feet, when the record indicated that the house is 2,100 square feet, the trial court's decision did not hinge on the size of the Ohio home. Therefore, the evidence supported the trial court's conclusion

that the move did not concretely have the capacity to improve the quality of life for both minor children and defendant.

For factor (c), the trial court was not satisfied that, if the court allowed the requested change in the minor children's domicile to Ohio, it could modify the parenting-time schedule to adequately preserve and foster each party's parental relationship with MDL and BSL. The court properly observed, "The parties have been exercising week-on/week-off for seven years. Modifying this would not preserve and foster [plaintiff's] relationship with the children and the Court cannot fashion a scheduled that adequately preserves the relationship with the distance to Ohio." The record indicated that plaintiff was significantly involved in BSL's extracurricular activities and he was attempting to rebuild his relationship with MDL, both of which would be undermined by the potential relocation to Ohio. Moreover, although defendant contends that an alternate parenting-time arrangement may strengthen the relationship between plaintiff and the minor children, the potential consequences of the proposed move to Ohio had not been fully established. It is evident from the record that the trial court properly applied this to the facts before it, and we see no basis to conclude that the trial court's finding under this factor was against the great weight of the evidence.

Further, despite determining that defendant did not meet her burden to show that a change in domicile was justified under the applicable factors, the trial court opined:

> Even if Defendant-Mother did survive MCL 722.31(4), there is an established custodial environment with both parents for [BSL] and the move would modify that established custodial environment. As previously indicated in the custody determination pursuant to MCL 722.23, the Court does not find clear and convincing evidence to modify the established custodial environment that both parties have with [BSL]. Further, it should be noted that if the analysis was related to [MDL] only, the move would likely be granted. However, it is not in the best interest of the children to separate them. Defendant-Mother has already indicated that if her request for a modification of domicile was not granted for the children, she would remain in the State of Michigan.

Ultimately, the trial court's findings under change-of-domicile factors (a) and (c) were not against the great weight of the evidence, and defendant's claims of error regarding the denial of her motion to change domicile are not supported by the record.

## VI. PARENTING TIME

Defendant argues that the trial court improperly increased plaintiff's parenting time with MDL. We disagree.

Generally, a trial court may not modify a parenting-time order in the absence of proper cause or a change of circumstances. *Shade v Wright*, 291 Mich App 17, 22-23; 805 NW2d 1 (2010). But not all changes in parenting time will change a child's established custodial environment, and the proper cause or change of circumstances analysis need not be undertaken if the parenting-time change would not change the established custodial environment. *Sabatine*, 513 Mich at 290-291. "If the modification would change the child's established custodial environment,

the clear-and-convincing-evidence standard applies to the best-interest inquiry, but if the modification does not change the child's established custodial environment, the preponderance-of-the-evidence standard applies." *Id*. "Thus, . . . the relevant question to determine whether the 'proper cause and change of circumstances' framework applies is whether the modification to parenting time will 'change whom the child naturally looks to for guidance, discipline, the necessities of life, and parental comfort . . . .' " *Id*. at 291 (quotation marks and citation omitted).

As previously noted, in April 2024, the trial court entered a temporary order granting plaintiff four hours of parenting time per week and requiring him to attend counseling with MDL. However, in its subsequent opinion and order, the court increased plaintiff's parenting with MDL by three hours on alternating weeks to coincide with plaintiff's parenting time with BSL. The trial court explained:

> If the children remain in the State of Michigan, the Court can continue regular equalized parenting time with [BSL] and work on a reasonable progression of parenting time with [MDL]. The Court believes that more frequent contact between Plaintiff-Father and [MDL] will assist in mending their bond and creating a strong relationship. While the Court does not find equalized parenting time for [MDL] appropriate at this time, the Court's goal would be to work towards reinstated a more equalized schedule. The Court has taken into consideration with [MDL's] parenting time that Plaintiff-Father did not seek enforcement of his parenting time with [MDL] until Defendant-Mother filed the motion to change the children's domicile.

Defendant contends that the trial court erred by changing parenting time without a showing of proper cause or a change of circumstances that would warrant such a change. However, defendant herself asserted that there had been proper cause or a change of circumstances since the original 2017 parenting-time order in her motion to change custody, parenting time, domicile, and the children's schools. See *Kloian v Domino's Pizza LLC*, 273 Mich App 449, 455 n 1; 733 NW2d 766 (2006) (stating, "A party may not take a position in the trial court and subsequently seek redress in an appellate court that is based on a position contrary to that taken in the trial court") (quotation marks and citation omitted). Thus, by defendant's own admission, the trial court was permitted to change the parenting-time arrangement. Moreover, defendant fails to explain how granting plaintiff a mere three additional hours with MDL every other week would alter the minor child's established custodial environment with defendant, or shift who MDL depends on "for guidance, discipline, the necessities of life, and parental comfort." MCL 722.27(1)(c). Additionally, defendant neglects to consider that for a significant portion of MDL's life, the parties maintained equal parenting time concerning the child. *Sabatine*, 513 Mich at 295.

Furthermore, the trial court's decision was careful and principled; it reasoned that additional parenting time, provided under controlled circumstances, would help repair the bond between MDL and plaintiff. See MCL 722.27a(1) (providing, "Parenting time shall be granted in accordance with the best interests of the child. It is presumed to be in the best interests of a child for the child to have a strong relationship with both of his or her parents"). The court also ordered that plaintiff's girlfriend be absent for plaintiff's parenting time, consistent with defendant's testimony that the minor children's relationship with plaintiff declined because MDL and BSL believed plaintiff's girlfriend and her children were receiving a disproportionate amount of

plaintiff's attention. The trial court additionally refused to hold defendant in contempt or issue makeup parenting time for the time that was missed between plaintiff and MDL. While plaintiff's verbal abuse toward MDL was a legitimate cause for concern, the trial court accounted for this by ordering that the two continue participating in family counseling to address their issues. We cannot find that this measured and limited approach was "palpably and grossly violative of fact and logic." *Sabatine*, 513 Mich at 284.

Affirmed.

/s/ James Robert Redford
/s/ Michael J. Riordan
/s/ Mariam S. Bazzi